## Case No. 13,098.

### SMITH et al. v. REYNOLDS et al.

[10 Blatchf. 100; 3 O. G. 214; 6 Am. Law T. 41; Cox, Manual Trade-Mark Cas. 225.] [1]

Circuit Court, S. D. New York. July 27, 1872.

TRADE-MARK—PARTIES OWNING — FIRM NAME—DEVICE—REGISTRATION.

1. The firm of J. & Co., in registering a trade-mark for paints in the patent office, under sections 77, &c., of the act of July 8th, 1870 (16 Stat. 210), recorded, as the names of the parties desiring the protection of the trade-mark, and their residences and places of business, "J. & Co., of No. 276 Pearl street, in the city of New York, county and state of New York, and engaged in the manufacture and sale of paints at said New York," and nothing further: *Held*, that it was not necessary to record the name of each of the individual partners of the firm, and his place of residence, and that the

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission. Cox, Manual Trade-Mark Cas. 225, contains only a partial report.]

residence and place of business of the firm, as the party desiring the protection, were sufficiently stated.

2. The act requiring that "the class of merchandise, and the particular description of goods comprised in such class, by which the trade-mark has been or is intended to be appropriated," shall be recorded, it is sufficient, where a trade-mark is claimed for paints generally, merely to specify paints as the class of merchandise, without specifying any description of paints.

3. The illustration of a crown, applied as a brand, by stencil plate or die, to vessels containing paints, or printed on labels or wrappers applied to such vessels, or on notices advertising such paints, may be a lawful trade-mark, under said act, because, when used in connection with paints, it may designate, by association in the minds of purchasers of and dealers in paints, the origin or ownership of such paints, as being in a particular manufacturer.

4. The illustration of a crown being claimed by J. & Co., as a trade-mark for paints generally, under said act, and it being alleged that R. had infringed such right, and it appearing that a brand of a crown had been used by B., for white lead alone, of a particular quality and description, made by him continuously, from a period prior to the use, and the registration, of such brand as a trade-mark by J. & Co., and until R. purchased from B. his paints, materials and labels, and the right to use them, including the labels embodying the device of a crown, and that R., from the time of his purchase, which was prior to such registration, had continuously used the device of a crown on some description of paints: *Held,* that, at the time of registering the trade-mark, J. & Co. had no right to the use of it for paints generally, because R. then had a right to use it for the class of paints for which B., as well as R., had previously used it.

5. A registration, under the act, must stand or fall, as a whole, for that to which the registration declares it is intended to appropriate it, there being no provision for maintaining a suit on it, where the grant is valid as to a part, but not as to the whole.

[This was a bill in equity by J. Lee Smith and others against Robert Reynolds and Samuel Jacobs to restrain the infringement of a trade-mark. A motion for an injunction was denied. Case No. 13,097. Proofs were taken for final hearing, and a motion again made for an injunction restraining the use by defendant of plaintiffs' trade-mark.]

John Hough, for plaintiffs.
Frederic S. Blount, for defendants.

BLATCHFORD, District Judge. The 77th section of the act of July 8th, 1870 (16 Stat. 210), provides, "that any person or firm domiciled in the United States, * * * and who are entitled to the exclusive use of any lawful trade-mark, or who intend to adopt and use any trade-mark for exclusive use within the United States, may obtain protection for such lawful trade-mark, by complying with the following requirements, to wit: First. By causing to be recorded in the patent office the names of the parties, and their residences, and place of business, who desire the protection of the trade-mark. Second. The class of merchandise, and the particular description of goods comprised in such class, by which the trade-mark has been or is intended to be appropriated. Third. A description of the trade-mark itself, with fac-similes thereof, and the mode in which it has been or is intended to be applied and used. Fourth. The length of time, if any, during which the trade-mark has been used. Fifth. The payment of a fee of twenty-five dollars, in the same manner and for the same purpose as the fee required for patents. Sixth. The compliance with such regulations as may be prescribed by the commissioner of patents. Seventh. The filing of a declaration, under the oath of the person, or of some member of the firm, * * * to the effect, that the party claiming protection for the trade-mark has the right to the use of the same, and that no other person, firm or corporation has the right to such use, either in the identical form, or having such near resemblance thereto as might be calculated to deceive, and that the description and fac-similes presented for record are true copies of the trade-mark sought to be protected." By section 78, such trade-mark is to remain in force for thirty years from the date of such registration; "and, during the period that it remains in force, it shall entitle the person, firm or corporation registering the same to the exclusive use thereof, so far as regards the description of goods to which it is appropriated in the statement filed under oath as aforesaid, and no other person shall lawfully use the same trade-mark, or substantially the same, or so nearly resembling it as to be calculated to deceive, upon substantially the same description of goods." Section 79 provides, that, if any person or corporation "shall reproduce, counterfeit, copy or imitate any such recorded trade-mark, and affix the same to goods of substantially the same descriptive properties and qualities as those referred to in the registration," the party aggrieved shall "have his remedy according to the course of equity, to enjoin the wrongful use of his trade-mark, and to recover compensation therefor, in any court having jurisdiction over the person guilty of such wrongful use;" and that, "the commissioner of patents shall not receive and record any proposed trade-mark which is not and cannot become a lawful trade-mark, * * * or which is identical with a trade-mark appropriate to the same class of merchandise, and belonging to a different owner, and already registered or received for registration, or which so nearly resembles such last mentioned trade-mark as to be likely to deceive the public."

On the 30th of December, 1870, the firm of J. Lee Smith & Co. filed in the patent office a petition, signed by themselves, in which they are described as of "No. 276 Pearl street, in the city of New York, county and state of New York, and engaged in the manufacture and sale of paints at said New York," and in which they represent, "that they have used for fifteen months last past, are now using, and have the right to use, a trade-mark for

said paints, which is correctly represented and set forth in the annexed fac-simile and statement," and pray "that said trade-mark may be registered and recorded in the patent office according to law." The "statement" thus referred to was in these words: "To all whom it may concern: Be it known, that we, J. Lee Smith & Co. of the city of New York, in the county and state of New York, use a trade-mark for paints, of which the following, together with the fac-simile hereto attached, is a correct description. The said trade-mark consists of the illustration of a crown, as is clearly shown in the fac-simile. The crown may be of the shape and style shown, or of any other suitable form. It is applied as a brand, by stencil plate or die, to the casks, cases, or vessels containing the said paint, printed upon labels or wrappers which are applied to said cases or vessels, or upon the business cards, notices or placards advertising the paints to the public." Accompanying these papers was an oath, made by a person described therein as "a member of the firm of J. Lee Smith & Co., and representing the firm of J. Lee Smith & Co., the above named petitioner," and setting forth, "that, according to the best of his knowledge and belief, the description and fac-simile herewith presented for record are true copies of the trade-mark sought to be protected, that they have a right to the use of the said trade-mark, and that no other person, firm or corporation has the right to such use, either in the identical form or having such near resemblance thereto as might be calculated to deceive." The patent office required the applicants to strike out from the "statement" these words: "The crown may be of the shape and style shown, or of any other suitable form;" and they were stricken out by them. As thus amended, the trade-mark was registered on the 21st of February, 1871. Thereupon, under that date, the patent office issued a certificate, certifying, "that J. Lee Smith & Co. of New York, New York, did, on the thirtieth day of December, 1870, deposit in the United States patent office, for registration, a certain trade-mark for paints, whereof a copy is hereto annexed, that they filed therewith the annexed statement, and, having paid into the treasury of the United States the sum of twenty-five dollars, and otherwise complied with the act of congress in such case made and provided, the said trade-mark has been duly registered and recorded in the said patent office, and will remain in force for thirty years from the twenty-first day of February, one thousand eight hundred and seventy-one." The "statement" and fac-simile are annexed to the certificate. The fac-simile shows one drawing of a crown.

The bill in this case is founded upon the statutory right thus claimed to have been acquired to such trade-mark, and is filed by the members of the said firm of J. Lee Smith & Co., and alleges, that the defendants are selling paint contained in casks, cases or vessels, upon which said trade-mark, or an imitation thereof, bearing such near resemblance thereto as is calculated to deceive, is applied as a brand, by stencil plate or die, or by labels or wrappers upon which said trade-mark, or said imitation thereof, has been printed, and have also used the said trade-mark, or said imitation thereof, upon the business cards, notices and placards advertising the defendants' paints to the public. The plaintiffs move for an injunction to restrain such use of such trade-mark. Full proofs have been taken for final hearing, on both sides, and on them the motion is made.

It is objected to the validity of the registration in this case, that the names of the parties and their residences and places of business were not caused to be recorded in the patent office by the parties desiring the protection of the trade-mark. It is insisted, that the name of each of the individual partners composing the firm, and his place of residence, should have been set forth. But, it is to be noted, that the statute gives the privilege to any "firm domiciled in the United States," as well as to any person domiciled therein. In this view, in the case of a firm, it is sufficient if the name of the firm is given, provided the trade-mark is claimed by the firm, as a firm. Giving the name of the firm is giving the name of the party desiring the protection. The statute requires the declaration, under the oath of some member of the firm, to be to the effect, that "the party claiming protection," that is, the firm, has a right to the use of the same, &c. So, also, setting forth that the firm is "of No. 276 Pearl street, in the city of New York, county and state of New York, and engaged in the manufacture and sale of paints at said New York," is a sufficient statement of the residence and place of business of the firm, as the party desiring the protection.

It is also objected, that, although the registration papers specify "paints" as the class of merchandise, yet there is no designation of the particular description of goods comprised in such class, to which the trade-mark is or is to be appropriated. But the parties describe themselves as engaged in the manufacture and sale of paints generally, and it is a trade-mark for paints generally which they state they use and have a right to use, and desire to have protected. They cover the whole class of merchandise called "paints," and every description of goods comprised in such class. That being clearly stated by them, any further specification was unnecessary.

It is insisted, by the defendants, that the illustration of a crown, applied as set forth in the "statement," is not the subject of a lawful trade-mark, because it does not indicate the true origin or ownership of the paint. The statute protects only that which is or can become a lawful trade-mark. It declares, that the mere name of a person, firm or corporation cannot be a lawful trade-mark, but that

such name, accompanied by a mark sufficient to distinguish it from the same name when used by other persons, may be a lawful trade-mark. A fortiori, a mark or device distinguishable from other marks, when used in connection with a particular article, may designate, by association in the minds of purchasers of and dealers in such article, the origin or ownership of such article, as being in a particular manufacturer, and thus be a lawful trade-mark. Delaware & H. Canal Co. v. Clark, 13 Wall. [80 U. S.] 311. The practice of the patent office, in registering trade-marks, under the act of 1870, has been in accordance with this view, and properly so. It has, on discussion, authorized, as lawful trade-marks, the letter X, applied to brooms, and the letter D, encompassed by the figure of a lozenge, applied to loom temples. Com'rs Dec. 1870, p. 142, and Id. 1871, p. 248. In the case of Morrison v. Case [Case No. 9,845], it was held, that, under the act of 1870, the words, "The Star Shirt," and those words with the device of a six-pointed star used in connection therewith, and the device and words, "The * Shirt," used as a trade-mark in connection with the manufacture and sale of men's and boys' shirts, and taken by dealers as designating the shirts made by a particular manufacturer, are a lawful trade-mark. There can be no doubt, that a simple illustration of a crown, to be applied in use as designated in this case, in connection with paints, to indicate their origin and ownership, is a lawful trade-mark, under the statute.

The principal defence set up in the answer of the defendants is, that, in October, 1868, the Bridgewater Paint and Color Works Company, then doing business in the city of New York, made a label, brand or trade-mark of a crown, which was used for white lead alone, of a particular quality and description, manufactured by said company for J. J. Vogt & Co., of Cleveland, Ohio, the same being an imprint on paper, consisting of the words, "Golden Crown," with the illustration of a crown underneath them, and, underneath the crown, an illustration of a heraldic coat of arms, and, on the left of the coat of arms, the words, "manufactured expressly for J. J. Vogt & Co.," and, on the right of the coat of arms, the words, "No. 32 Public Square, Cleveland, Ohio," and, underneath the whole, the words, "White Lead;" that the said company, of which the defendant Reynolds was one of the copartners, having been dissolved, its business in the manufacture of paints was continued by the defendant Reynolds and one Jacob Israel, under the name of Reynolds & Co., and the same quality of white lead was continued to be manufactured by them, and was distinguished by a brand, label or die, consisting of an inner circle, within which, at the top, was the illustration of a crown, and underneath that the letters "XX," and underneath those letters the words, "Reynolds & Co.," and outside of such circle a second circle, and in the ring between the two circles, the words, circumferentially, "Pure English White Lead;" that, the copartnership of Reynolds & Co. having expired January 1st, 1872, the defendants, under the firm of Reynolds & Jacobs, continue the manufacture of the same quality of white lead, using the same brand, die or label which had been used by Reynolds & Co. since February, 1870, as a trade-mark; and that, in February, 1870, the defendant Reynolds procured the brand to be made of such trade-mark for Reynolds & Co., which they and the defendants have ever since constantly and uninterruptedly used, to designate a particular quality of white lead manufactured by them.

The defendants have used the illustration of a crown, as a device, and as part of a brand or label, on packages containing white lead ground in oil, and on packages containing blanc de zinc, or zinc ground in oil. Although the device of a crown was adopted and used by the defendant Reynolds, in the shape in which the defendants now use it, in February, 1870, and the plaintiffs did not file their first statutory papers in the patent office until December, 1870, yet the plaintiffs show that they adopted and used their device of a crown as early as December, 1869. In reply to this, the defendants show the use, by the Bridgewater Paint and Color Works Company, in 1868, and from that time until its dissolution, of the device of a crown on three different forms of label, put upon packages containing paints made by them. One is the form hereinbefore referred to as set forth in the answer. Another contained the simple device of a crown, and the words, "Pure English White Lead, J. J. V. & Co." The other contained an illustration of a heraldic coat of arms, resembling very much the coat of arms of the crown of Great Britain, embodying the device of a crown as an integral part of it, and the words, "Pure English White Lead, ground expressly for J. J. Vogt & Co., 32 Public Square, Cleveland, Ohio." They also show, that, in November, 1869, the defendant Reynolds purchased from the Bridgewater Paint and Color Works Company, their paints, materials and labels, and the right to use them, including the labels embodying the device of a crown. The defendant Reynolds has, since that time, continuously, in his firms, used the device of a crown on some description of paints. The brand or label of the form used by the defendant Reynolds, in his firms, since February, 1870, is as near a resemblance to one at least of the three forms of label used by the Bridgewater Paint and Color Works Company, as it is to the device shown in the plaintiffs' registration, and the latter is as near a resemblance to such Bridgewater label as it is to the brand or label of the defendants. It is manifest, therefore, that the plaintiffs had, at the time they registered the illustration of a crown as a trade-mark for paints generally, no right to the broad use of it for paints generally, the defendant Reynolds and his

then firm having the right to the use of it for, at least, the classes of paints for which it had been used as a label or trade-mark by the Bridgewater Paint and Color Works Company, and by the defendant Reynolds, and his firm of Reynolds & Co., prior to the time of such registration. The plaintiffs registered it, and claimed the right to use it, as a trade-mark for paints generally, for all descriptions of paints, without reservation or exception. Whatever grant there is of it, by reason of the registration made by the plaintiffs, is of the right to use it for paints of all kinds—for the class of merchandise called "paints." The plaintiffs have not restricted themselves to any particular descriptions of goods comprised in such class. Their registration must stand or fall as a whole, for that to which they declare, in their registration, they intend to appropriate it. There is no provision in regard to trade-marks, such as there has been and is in regard to patents for inventions, that a suit may be maintained where the grant is valid as to a part, but not as to the whole. It follows, therefore, that the registration of this trade-mark, in the form in which it was made, conferred no right on the plaintiffs, in respect to any thing purporting to be covered by it.

The motion for an injunction must, for these reasons, be denied.

[The cause came on for final hearing, when the bill was dismissed. Case No. 13,099.]