## Case No. 13,099.

### SMITH et al. v. REYNOLDS et al.

[13 Blatchf. 458; Cox, Manual Trade-Mark Cas. 285.] [1]

Circuit Court, S. D. New York. July 19, 1876.

TRADE-MARK—PARTICULAR USE—REGISTRATION.

The registration of a trade-mark for "paints" by A., who had previously acquired the exclusive use of such trade-mark for particular kinds of paints only. does not enable A. to restrain B. from using such trade-mark upon another kind of paint. to which B. had been in the habit of affixing such trade-mark prior to such registration.

[This was a bill in equity by J. Lee Smith & Co., against Robert Reynolds and Samuel Jacobs.]

Alexander H. H. Dawson, for plaintiffs.
Hugh L. Cole, for defendants.

SHIPMAN, District Judge. This is a bill in equity to restrain the defendants from the use of a trade-mark for "paints," which was registered in the patent office on February 21st, 1871. After full proofs had been taken for final hearing. a motion for a preliminary injunction was heard before Judge Blatchford, whose opinion (Smith v. Reynolds [Case

1 [Reported by Hon. Samuel Blatchford, District Judge. and here reprinted by permission. Cox, Manual Trade-Mark Cas. 285, contains only a partial report.]

No. 13,098]) recites the allegations of the bill and answer, and the facts which he found to have been proved. No question has been made before me as to the correctness of the decision of the learned judge upon the points of law which are considered in his opinion. The controversy has turned upon the questions of fact. While I concur with Judge Blatchford in the result which he reached, I deem it desirable to state somewhat more in detail than he did, some of the facts which seem to me to be important.

The plaintiffs, who have been for many years importers of paints, in September, 1869, opened negotiations with a new firm of English manufacturers, for the purpose of introducing their goods into the market in this country. Recognizing the importance of having a trade-mark by which these goods should be known, and under which they should attain a reputation, the plaintiffs adopted the crown as such mark, and instructed the English firm to place that mark upon all goods of their manufacture which were sent to the plaintiffs. This was done, and the crown brand soon became well known and was largely sold. It was applied on "Paris white. Venetian red, drop black, Indian reds, Tuscan reds, patent drier, oak stain, dry ochres, ochres in oil," and various other colors. It does not appear to have been applied to white lead of blanc de zinc. The white lead which the plaintiffs sold was the manufacture of other English firms. whose goods had their own peculiar and well known trade-mark. No white lead of English manufacture, having a crown trade-mark, has been known in the markets of this country. A number of years ago, another firm in the city of New York imported blanc de zinc which was branded with the English coat of arms. Their business was transferred to a corporation in Boston, which continues the sale of this article under the same brand.

At the time of the registration of the crown trade-mark, the plaintiffs had acquired, at common law, a right to the use of this mark upon the particular class of paints to which it had been applied. but had not used the mark upon all paints which they sold, and especially had not adopted its use upon white lead or zinc. On December 30th, 1870, they filed a petition in the patent office, representing that they were using. and had the right to use, a trade-mark for "paints," which trade-mark consisted of the illustration of a crown. On February 21st. 1871. the patent office issued a certificate, to the effect that said trade-mark had been duly registered and recorded, and would remain in force for thirty years from that date. Since said date, it does not appear that the plaintiffs have used this trade-mark upon white lead or zinc, but they have continued to use it upon the same kinds of paint which have been mentioned. and the public has understood that the mark belonged to this particular manufacture, and distinguished it from like goods

of other manufacturers or vendors. In February, 1870, the firm of Reynolds & Co., which consisted of Robert Reynolds and Jacob Israel, who were manufacturers of paints, commenced to use a label and brand upon the white lead which they manufactured. This label consisted of an inner circle, within which, at the top, was the illustration of a crown, and underneath that the letters "XX," and underneath these letters the words "Reynolds & Co.," and outside of such circle a second circle, and in the ring between the two circles the words, circumferentially, "Pure English White Lead." The copartnership of Reynolds & Co. expired January 1st, 1872, and the defendants, under the firm of Reynolds & Jacobs, have continued to use the same brand upon their white lead ground in oil, and also upon packages of blanc de zinc ground in oil.

The question which arises upon this state of facts is—does the registration of a trademark for "paints," by a plaintiff who had previously acquired the exclusive use of such mark for particular kinds of paints only, enable the plaintiff to restrain a defendant from its use upon another kind of paints, to which kind he had been in the habit of affixing the same mark prior to the registration? The doctrine of the common law in regard to trade-marks is, that "every manufacturer, and every merchant for whom goods are manufactured, has an unquestionable right to distinguish the goods that he manufactures or sells, by a peculiar mark or device, in order that they may be known as his in the market for which he intends them, and that he may thus secure the profits that their superior repute, as his, may be the means of gaining. His trade-mark is an assurance to the public of the quality of his goods, and a pledge of his own integrity in their manufacture and sale." Amoskeag Manuf'g Co. v. Spear, 2 Sandf. 599. The Paris white, Venetian red, drop black, and other goods which were sold by the plaintiffs, had acquired a distinctive character and reputation in the market, under the name of the "crown" brand, which name indicated to the public the origin or ownership of the goods. But the white lead or the zinc which the plaintiffs sold had not acquired a distinctive character under the name of the "crown" brand, because they had not applied that name to either of these articles. Previously to the time of the registration, the plaintiffs had not, therefore, become entitled to the exclusive use of the representation of a crown upon all paints; but their right to the exclusive use of the mark was limited to the articles to which it had been appropriated. By registering this mark in the patent office, and appropriating it to all paints, they cannot, in my opinion, prevent the defendants from the use of the mark upon a class of goods to which they had applied the mark prior to the registration, especially as the plaintiffs have not, since the registration, extended actual use of their mark to that class. If a manufacturer of cotton tickings, who had acquired the right to the use of a trade-mark upon his tickings, should register his mark, and declare that it was intended to be appropriated to all manufactures of cotton, he would not be thereby enabled to restrain a manufacturer of shirtings who had previously placed the same mark upon his own manufactured article. The plaintiffs had acquired a valid right, at common law, to the use of the mark upon those kinds of paints to which it had been appropriated prior to the registration. The statutory right which they acquired by the registration (and which statutory right is the foundation of this bill) did not enable them to extend their exclusive right to the use of the mark upon all paints, as against a manufacturer who had previously used the same mark upon a particular class of paints, to which kind or class the plaintiffs had not appropriated the mark.

The bill should be dismissed.