AUNT JEMIMA MILLS CO. v. RIGNEY & CO.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

No. 42.

1. TRADE-MARKS AND TRADE-NAMES ⬤87—UNFAIR COMPETITION—ACQUIESCENCE.

After complainant's predecessor had, by extensive advertising, created a market for its flour, known as "Aunt Jemima's," which was sold under a trade-mark consisting of the words "Aunt Jemima's," accompanied by a picture of a negress laughing, defendants adopted that trade-mark, selling syrup under the same name. One day before filing an application for registration of such trade-mark for syrup and sugar cream, defendant, wrote, calling the attention of complainant's predecessor to the matter. When defendant's application for registration came to its attention, complainant's predecessor, which had already registered the trade-mark for flour, replied to defendant's letter, stating it presumed that defendant could use the name for syrup without violating any law. *Held*, that the letter which made inquiries as to defendant's registration of the trademark, etc., was not an acquiescence in defendant's use of such trade-mark, but was merely the expression of the opinion of plaintiff's predecessor as to the law governing the case, and hence did not estop complainant or its predecessor from thereafter relying on the law, which in reality protected the rights of complainant and its predecessor in the trade-mark.

2. TRADE-MARKS AND TRADE-NAMES ⬤23—RIGHT TO TRADE-MARK—NATURE OF.

The right to a trade-mark, though strictly appurtenant to the trade, becomes a property right as soon as it identifies the trade.

3. TRADE-MARKS AND TRADE-NAMES ⬤61—UNFAIR COMPETITION—INJUNCTION.

Where defendant knowingly adopted as a trade-mark and name for its syrup a trade-mark and name extensively advertised by complainant's predecessor for flour, and the adoption must have been either to get the benefit of the advertising of the flour or to forestall an extension of the trade, defendant has no equity which will prevent an injunction restraining the use of such trade-mark.

4. TRADE-MARKS AND TRADE-NAMES ⬤78—UNFAIR COMPETITION—RELIEF.

As complainant and its predecessor had the property right in the trademark, and as defendant's adoption was wrongful, and complainant was liable to be injured by the sale of inferior syrup, which the public might well conceive to be manufactured by it, defendant should be enjoined from the use of the trade-mark.

5. TRADE-MARKS AND TRADE-NAMES ⬤86—INJUNCTIONS—LACHES.

Though complainant and its predecessor delayed for eight years in asserting their rights, complainant is, defendant's taking having been wrongful, entitled to an injunction, though it is not entitled to an accounting for damages and profits.

Learned Hand, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Bill by the Aunt Jemima Mills Company against Rigney & Co. From a decree (234 Fed. 804) dismissing the bill, complainant appeals. Reversed.

Homer C. Underwood, of Detroit, Mich., Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., and Harry D. Nims, of New York City, for appellant.

F. F. Crampton, of Toledo, Ohio, for appellees.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. This is an appeal from a decree of the United States District Court for the Eastern District of New York dismissing the complainant's bill for infringement of trade-mark and for unfair competition on the ground that the goods manufactured by the parties respectively are different, viz. self-rising flour, by the complainant and pancake syrup by the defendants.

The Davis Milling Company, of St. Joseph, Mo., originated the trade-mark, which consists of the words "Aunt Jemima's," accompanying the picture of a negress laughing, in 1899, as we infer from the statement and declaration accompanying the registered trade-mark taken out in the United States Patent Office April 3, 1906, for self-rising flour. February 1, 1914, the Milling Company sold out its business, trade-marks, and good will to the Aunt Jemima Mills Company, the complainant in this case.

Since February 15, 1908, Rigney & Co., the defendants, have used a trade-mark precisely like the complainant's, which was registered December 29, 1908, in the Patent Office on an application filed March 6, 1908, for certain syrups and sugar creams. March 14, 1908, as soon as the application came to its attention, the Milling Company wrote to Rigney & Co. as follows:

"St. Joseph, Mo., March 14, 1908.

"Rigney & Co., Brooklyn, N. Y.—Gentlemen: We have your letter of the 5th. We are surprised to have you use the name 'Aunt Jemima' for your syrup, but presume you can do so without violating any law in the matter. . Mr. Jackson wrote us about this, but we did not know that you were going to do it right 'hot off the pan' as one might say. We thought you were going to wait to hear from us. We note you say you have copyrighted 'Aunt Jemima.' Were you able to obtain a copyright of 'Aunt Jemima' for maple syrup, or did you simply register it as a trade-mark? The sample which you sent us has been received, and it is as far as we can see, a very fine article. The looks of the Aunt Jemima Pancake Cream, as you call it, is not as good as the taste. The looks we think could be improved perhaps. Do you make this in a syrup as well as in the cream? Do you work the trade entirely through brokers, or do you handle it with salesmen working the retail trade? Would you be interest (sic) in taking on a pancake flour proposition along with your maple syrup and other lines? If so, we might have something of interest for you.        Yours truly,                    The Davis Milling Co.,

"Robert R. Clark."

It is perfectly clear that Rigney & Co. adopted the trade-mark (though with full knowledge of the complainant's prior use) upon the advice of counsel and in full belief that they had a right to use it for their specific products. They brought it to the attention of the Milling Company, the complainant's predecessor, a little over two weeks after they had selected it, and one day before they filed their application for registration in the Patent Office.

[1] The above letter is obviously no evidence of abandonment or of nonuser by the complainant, but the defendants say it is an acquiescence in their use of the trade-mark for syrups. We do not so construe it. The complainant was speaking of a matter of law, and said it "presumed" that the defendants could do so without violating any law.

But if, as matter of law, the defendants had no right to use the trademark, this expression of opinion by the complainant does not make the law other than it is, nor estop it from relying on the law as it really is. Bigelow on Estoppel, p. 634. Indeed, the complainant seems, in addition, to have been misled by the defendants as to the facts, because the letter goes on to say that the defendants had written they had copyrighted the trade-mark, and to ask whether they meant that they had registered it in the Patent Office. No reply to this letter was ever received. If the complainant had authorized the defendants to use the mark, or even had said it did not object to their doing so, mistake of law would not save it. When, however, it merely expressed a legal opinion, it did nothing to mislead the defendants, and they took the risk of acting on that opinion if it were erroneous. The bill was filed in December, 1915.

[2] This brings us to inquire what the law on the subject really is. We find no case entirely like the present. In Hanover Star Milling Co. v. Allen & Weeks, 208 Fed. 513, 125 C. C. A. 515, L. R. A. 1916D, 136, affirmed Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713, which was also said by Mr. Justice Pitney to be a most unusual case, it was held that a trade-mark is not a subject of property, and that even a technical trade-mark like the one under consideration will be protected only in markets where it has been established; that is, where it has come to indicate the origin or ownership of the goods it marks. In that case the trade-mark was adopted without any knowledge whatever of the prior use. The right to a trade-mark, though strictly appurtenant to the trade, becomes a property right as soon as it identifies the trade. When it gets this far, it is a mere question of words whether we say that the trade or the trade-mark is protected. Mr. Justice Pitney, in affirming this judgment, recognized an exception when he said:

"In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless at least it appears that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like."

[3] To use precisely the same mark, as the defendants have done, is, in our opinion, evidence of intention to make something out of it—either to get the benefit of the complainant's reputation or of its advertisement or to forestall the extension of its trade. There is no other conceivable reason why they should have appropriated this precise mark. The taking being wrongful, we think the defendants have no equity to protect them against an injunction, unless they get it from a consideration now to be examined.

[4] It is said that even a technical trade-mark may be appropriated by any one in any market for goods not in competition with those of the prior user. This was the view of the court below in saying that no one wanting syrup could possibly be made to take flour. But we think that goods, though different, may be so related as to fall within the

mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity. We have held in Florence v. Dowd, 178 Fed. 73, 101 C. C. A. 565, that a manufacturer of hair brushes under the trade-mark "Keepclean," who did not make toothbrushes, is entitled to be protected against the unfair competition of one who manufactures toothbrushes under the trade-mark "Sta Kleen." So in Collins Co. v. Oliver Ames Co. (C. C.) 18 Fed. 561, a manufacturer of metal articles, which had never made shovels, was granted an injunction preventing the defendant from putting the complainant's trade-mark on its shovels.

The defendants are a partnership, and did not incorporate the words "Aunt Jemima's" into their firm name; but the complainant seems to think that appropriation of a trade-mark is to be treated in exactly the same way as appropriation of a trade-name. The latter is a trespass of the same nature as is committed by one who applies another man's name to his own goods. This is a wrong which equity will enjoin without reference to the character of the article, or to the question of competition or of prior occupation of the market in any particular territory. No one has a right to apply another's name to his own goods. If, for instance, one were to publish a book on banking under the name of a firm of bankers, it would be no answer to say that there was no competition between banking and publishing, or that the bankers had sustained no pecuniary damage, or that the book was a good book. The act would still be a trespass, for which the bankers would be entitled to at least nominal damages at law, and, that remedy being inadequate and the trespass being a continuing one, they would be entitled to relief in equity. Such is our decision in British American Tobacco Co. v. British American Cigar Stores Co., 211 Fed. 933, 128 C. C. A. 431, Ann. Cas. 1915B, 363, in which a company engaged solely in the wholesale tobacco business was protected against the use of a similar corporate name by a retailer of cigars, although there was no competition between them.

There are many decisions of the English courts to the same effect. In Eastman Company v. Kodak Cycle Co., 15 Reports Patent Cases, 105, the complainant was a manufacturer of cameras under the name Kodak. Defendant, under the name "Kodak Cycle Company," began the manufacture of bicycles, calling them "Kodak" cycles, and registered the name as a trade-mark for bicycles and other vehicles. The Eastman Company brought suit to restrain the use of the word "Kodak" and to rectify the register. The motion for injunction and the motion to rectify the register came on to be heard together. The motion to rectify was sustained, and the defendant's mark expunged, and an injunction was granted. Mr. Justice Romer said:

"Then I have to deal with the application for an injunction against the defendants in respect of what they are doing. They have just started business practically, and it appears to me that to allow them to use the word 'Kodak' as part of the title of the Kodak Cycle Company, Limited, would be to give them the benefit of what, in my opinion, substantially amounts to an improper dealing on their part. It would be to allow this company certainly to cause confusion between it and the plaintiff company. I think it would injure the plaintiff company, and would cause the defendant company to be identified with the plaintiff company, or to be recognized by the public as being connected with it, and I think, accordingly, the defendant, the Kodak Cycle Company, Limited, ought to be restrained from carrying on business under that name. Moreover, it appears to me that they ought not to be permitted to sell their cycles under the name of the 'Kodak Cycles' for similar reasons. I think it would lead to confusion, I think it would lead to deception, and I think it would be injurious to the plaintiff company. I therefore grant an injunction to restrain the defendant companies, or either of them, from carrying on business under the name 'Kodak Cycle Company, Limited,' or under any name comprising the word 'Kodak' likely to mislead or deceive the public into the belief that the defendant company is the same company as or is connected with either of the plaintiff companies, or that the business of the said companies, or either of them, is the same as, or is in any way connected with, the business of the plaintiffs, the Eastman Photographic Materials Company, Limited. I also grant an injunction to restrain the defendant companies, and each of them, from selling, or offering to sell, any of their cycles or goods as 'Kodak.' I think that will sufficiently protect the plaintiffs. Of course the respondents, the defendants, must pay the costs, including the costs of the comptroller."

Dunlop Pneumatic Tyre Co. v. Dunlop Lubricant Co., 16 Reports Patent Cases, 12: In 1888 the word "Dunlop" was first used by complainant's predecessors to designate goods manufactured by them. Complainant made bicycle tires, rims, pumps, etc. One Funt started in business as the "Dunlop Lubricant Co.," and dealt in oils and lubricants for bicycles, which he sold in packages bearing the word "Dunlop" in large letters. Complainant had never dealt in oils or lubricants. Held, that the use of the word "Dunlop" by defendant was deceptive, and it was enjoined.

In Valentine Meat Juice Co. v. Valentine Extract Co., 17 Reports Patent Cases, 673, the complainant used the word "Valentine" upon liquid meat extracts for medicine. Defendant used the word "Valentine" on beef extract used for food. An injunction was granted.

Dunlop Pneumatic Tyre Co. v. Dunlop-Truffault Cycle & Tube Manufacturing Co., 12 Times Law Reports, 434: This was a motion for a preliminary injunction to restrain the defendant from using the name "Dunlop" as a part of its corporate style. Complainant was the manufacturer of pneumatic tires, defendant the manufacturer of bicycles and steel tubes used in the manufacture of bicycles. An injunction was granted. Mr. Justice Chitty holding that the name "Dunlop" had been chosen by the defendants to create confusion in the minds of the public and make them think that the defendant company was connected with that of the plaintiffs.

Premier Cycle Company v. Premier Tube Company, 12 Times Law Reports, 481: This was a motion for a preliminary injunction to restrain the defendants from using the word "Premier" as a part of their business style. Complainant was a manufacturer of bicycles and tubes

used in their construction. The defendants stated that they were tube manufacturers and had no intention of competing with the complainant in the making of bicycles. An injunction was granted.

We do not think these authorities apply to the appropriation of a trade-mark.

[5] As the defendants' conduct was wrongful, the complainant is entitled to an injunction, notwithstanding the delay of some eight years in asserting its rights. (McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828), but is not entitled to an accounting for damages and profits.

The decree is reversed.

LEARNED HAND, District Judge (concurring). The plaintiff's letter of March 14, 1908, does not seem to me an expression of an opinion on the law; the plaintiff does not profess to have examined its rights in the case, but to allow them to pass as between the parties, whatever they may be. Nor is there the least reason to suppose that if there was a mistake of law, it was mutual. The defendant consulted the plaintiff as to its position and the most that can be said of the reply is that the plaintiff explained its intention not to assert any rights upon the ground that it probably had none. If anything could better indicate that they meant not to examine the matter fully, I confess I cannot see what it was. Furthermore, I find in the letter not only complete acquiescence, but in substance an invitation to co-operate with the defendant in the very infringement itself. The plaintiff's subsequent letter of retraction of May 1, 1908, further corroborates this conclusion, at least it shows that it thought the defendant might interpret the earlier letter as I interpret it. This letter, after saying that the plaintiff had received no answer, added that the defendant had overstepped the bounds of "business courtesy" in getting the benefit of their years of advertising. Therefore they formally protested against any continuance and asked for advices that the defendant would discontinue so that they might take up the matter legally and find out what their rights were. I cannot see how in the face of this it can be said that they were misled as to those rights. Of course, if this letter had been received, there could be no claim of acquiescence, but the proof is only that it was regularly mailed and not received in due course. This does not make proof of its receipt.

Therefore, when the defendant after communicating with the plaintiff and getting their consent, as I believe, for nearly eight years built up a substantial business, the injustice is apparent, of allowing the plaintiff now to assert its rights. McLean v. Fleming, 95 U. S. 245, 24 L. Ed. 828, and Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526, do not support a contrary doctrine, even though they were not modified, by Saxlehner v. Eisner & Mendelsohn Co., 179 U. S. 19, 39, 40, 21 Sup. Ct. 7, 45 L. Ed. 60. Assuming that the theory of those cases is that time will never run against a fraud, surely it is wrong to say that when the plaintiff on original inquiry as to its position acquiesces in the infringement, the defendant commits a fraud in going on. Creswell v. Knights of Pythias, 225 U. S. 246, 261, 32 Sup.

Ct. 822, 56 L. Ed. 1074, seems to me a weaker case on the facts, yet the defendant succeeded.

I vote to affirm on the ground of acquiescence without expressing any opinion upon the plaintiff's original right.