## DEL MONTE SPECIAL FOOD CO. v. CALI-FORNIA PACKING CORPORATION.

Circuit Court of Appeals, Ninth Circuit.
September 16, 1929.

No. 5784.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., for appellant.

Pillsbury, Madison & Sutro, of San Francisco, Cal. (Frank D. Madison and Marshall P. Madison, both of San Francisco, Cal., and Archibald Cox, of New York City, of counsel), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. ▮ At the instance of the appellee, the appellant was enjoined by the decree of the District Court from using the word "Del Monte" in connection with the marketing of oleomargarine or other food products. Beginning 35 years ago, the appellee and its predecessors have organized and established a vast business in the production and sale of various food products, all labeled "Del Monte Brand." The words "Del Monte" in Old English type conspicuously displayed upon a shield coupled with the word "Brand" constitute the most prominent characteristic of the goods produced by the appellee. The name of appellee is printed upon its labels, but in a type so inconspicuous that it would hardly be noted when the goods were displayed upon the shelves of the grocery store, and might even escape closer inspection. In its advertising matter as well as in its method of labeling its products the emphasis is placed entirely upon the "Del Monte Brand," and little or no emphasis upon the name of the producer. The business has grown until the annual sales of the appellee aggregate over thirty millions of dollars, and it is estimated that the number of cans and packages labeled "Del Monte Brand'" disposed of in a year exceed 100,000,000. The advertising expenditures of the appellee in making known its Del Monte Brand products has exceeded $2,-000,000 in 1927, and the total expenditure for advertising these products has exceeded $11,800,000. The appellee's business has been constantly expanding, not only in volume but in the diversity of products produced and labeled with its brand, until at the present time it markets over 150 food products under the name "Del Monte Brand," all being sold in grocery stores. The public has become familiar not only with the label of the appellee but with their course of business by which

they have gradually extended their operations to other food products.

From time to time the appellee has registered the "Del Monte Brand" with the shield as a trade-mark for use in connection with various food products prepared and marketed by it. In 1926 W. W. Benchley, who was engaged in the brokerage business, made arrangements with an oleomargarine factory in Nashville, Tenn., to manufacture and pack for him for distribution in California oleomargarine marked conspicuously with the words "Del Monte Brand" on a shield of entirely different design from that of the appellee. After operating in a small way in Oakland and vicinity, Benchley organized the appellant corporation, and in the articles of incorporation stated that the purpose of the corporation was to deal in food products. No motive is suggested or discernible for the use of the words "Del Monte Brand" in connection with the sale of oleomargarine other than the desire and expectation of securing some benefit from the extensive advertising campaign and vast business operations of the appellee.

The appellant attacks the decree of the District Court upon the theory that the action was brought by the appellee to enjoin the infringement of its trade-mark. The appellee, however, disavows such contention, and maintains that the appellant is guilty of unfair competition, and that the suit is to enjoin the continuance of such competition. It is manifest from the consideration of the facts that the conduct of the appellant in labeling its oleomargarine "Del Monte Brand" is equivalent to marking it "made by the California Packing Corporation." Indeed, from the evidence, it would appear much less objectionable to make this direct statement than to label its goods "Del Monte Brand" coupled with the name of the "Del Monte Special Food Company" as the producer, for the reason that the public knows of the goods of the appellee by the brand rather than by its name.

The contention of the appellant is that, inasmuch as the appellee has not produced, and does not now produce, oleomargarine or use its label thereon, it is not and cannot be damaged by the use of "Del Monte Brand" upon the oleomargarine marketed by the appellant. The injury to the appellee by the use of the Del Monte Brand by the appellant does not result from preventing sale by appellee of oleomargarine of its own, but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control.

Its reputation for quality is therefore placed to some extent in the hands of a corporation who owes it no allegiance and has no concern in maintaining the high reputation established by the appellee, and who may utilize that reputation to sell the public an inferior production. Thus every effort made by the appellee to increase the volume and variety of its products and maintain its high standard of quality by its systematic and expensive advertising campaign and by care in the preparation of its products redound to the benefit of the appellant, which does not contribute in any manner to the expenditures involved in this vast undertaking, and whose only motive for the adoption of the same "brand" is to get the advantage of appellee's name, reputation, and good will. The law of unfair competition has resulted from the application of a simple proposition to the extension and modern development of manufacturing and merchandising. That principle may be expressed in the language used by the various courts when dealing with the subject of unfair competition, as follows: "That nobody has any right to represent his goods as the goods of somebody else." Elgin Natl. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 676, 21 S. Ct. 270, 274, 45 L. Ed. 365. As thus developed, the law has been well stated in a recent opinion of the Circuit Court of Appeals of the Second Circuit, by Judge L. Hand, in Yale Elec. Corp. v. Robertson (C. C. A.) 26 F.(2d) 972, 974, as follows:

"However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. Aunt Jemima Mills Co. v. Rigney, 247 F. 407, L. R. A. 1918C, 1039 (C. C. A. 2); Akron-Overland v. Willys-Overland, 273 F. 674 (C. C. A. 3); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (C. C. A. 6); Wall v. Rolls-Royce, 4 F.(2d) 333 (C. C. A. 3)."

The Circuit Court of Appeals of the Third Circuit, in an opinion by Judge Woolley, deals exhaustively with the subject now under discussion. Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962. In that case the District Court had refused to enjoin the use of the trade-mark on hats and caps where the complainant had confined the use of its trade-mark to clothing. As pointed out by Judge Woolley, the trial court based its decision denying relief upon the theory that there was no infringement of a trade-mark, by its use upon so different an article as hats and caps, but the Court of Appeals reversed the decision, holding that such use of the complainants' trade-mark constituted unfair competition. It is there held that the appropriation of a competitor's trade-name under such circumstances is trespass of the same nature as is one committed by one who applies another man's name to his own goods. Page 963 of 7 F.(2d). "It is a wrong which equity will enjoin even when the goods of the two men do not strictly enter into competition. British American Tobacco Co. v. British-American Cigar Stores Co., 211 F. 933, 128 C. C. A. 431, Ann. Cas. 1915B, 363; Eastman Co. v. Kodak Cycle Co., 15 Reports Patent Cases, 105; Dunlop Pneumatic Tire Co. v. Dunlop Lubricant Co., 16 Reports Patent Cases, 12; Valentine Meat Juice Co. v. Valentine Extract Co., 17 Reports Patent Cases, 673; Dunlop Pneumatic Tire Co. v. Dunlop-Truffault Cycle & Tube Co., 12 Times Law Reports, 434; Premier Cycle Co. v. Premier Tube Co., 12 Times Law Reports, 481—all cited and reviewed in Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, 410, 411, 159 C. C. A. 461, L. R. A. 1918C, 1039; Willys-Overland Co. v. Akron-Overland Tire Co. (D. C.) 268 F. 151, 153, and cases cited."

The evidence in the case at bar discloses that there was actual confusion in the minds of purchasers who purchased the appellant's product, in that they believed that the oleomargarine advertised as a "Del Monte product" was put out by the same people who were producing other "Del Monte products."

A witness, employed by the appellee to investigate the sales method of retailers of Del Monte brand oleomargarine, testified that at the 25 stores visited she was told in 15 that the "Del Monte Brand" oleomargarine was made by the same concern that manufactured other "Del Monte" goods. In 9 she was told it was not manufactured by the California Packing Corporation. The appellant's product was also advertised by one retailer as "Del Monte Nut Margarine" in the same advertisement in which one of appellant's products was advertised as "Del Monte Hot Sauce."

Mr. Williams of the Piggly Wiggly Pacific Company testified: "We have had many customers that asked for 'Del Monte Margarine' mention the fact that we handled the general line and wondered why we did not handle the 'Del Monte Margarine.'" One of the appellant's employees engaged in the distribution of the Del Monte oleomargarine to the retail trade gave instructions to his salesmen to "notify the trade that it was not the California Packing Corporation's product." It appears from this evidence that not only was the appellant's conduct in adopting the Del Monte brand and its corporate name, "Del Monte Special Food Company," calculated to confuse its product with the products of the appellee, but that such confusion had actually occurred.

We will now proceed to a consideration of some of the specific points raised by the appellant, but will not undertake to cover each point, because the general statements and principles hereinbefore enunciated dispose of most of the points raised by the appellants.

The first point is as to the jurisdiction of the federal court to entertain the appellee's complaint. The appellee does not predicate the jurisdiction of the court upon the infringement of a registered trade-mark, but upon the diversity of the citizenship of appellant and appellee. The diversity of citizenship is admitted, but it is claimed that the amount in litigation does not exceed the jurisdictional amount of $3,000. To this point appellant cites Elgin v. Marshall, 106 U. S. 578, 1 S. Ct. 484, 27 L. Ed. 249, and New England Mtg. Soc. Co. v. Gay, 145 U. S. 123, 12 S. Ct. 815, 36 L. Ed. 646; Mutual Life Ins. Co. v. Wright, 276 U. S. 602, 48 S. Ct. 323, 72 L. Ed. 726. These cases have no application to the situation in the case at bar, for they merely hold that, where the amount involved in the litigation is less than $3,000, the fact that the incidental results of the litigation may be much more far reaching and thus involve larger amounts is no ground for entertaining jurisdiction. In the case at bar the appellee is undertaking to protect the good will of its business by invoking aid of a court of equity to enjoin the practices of the appellant which threaten to injure or destroy that good will and that business.

The bill alleges that the value of the good will involved is more than $2,000,000, and

more than $11,000,000 has been spent in advertising. Under these circumstances, there is no question but that the values litigated exceed the jurisdictional amount. See Hilson Co. v. Foster (C. C.) 80 F. 896, 897; Bittermen v. Louisville & Nashville R. R., 207 U. S. 205, 225, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Lambert v. Yellowley (C. C. A.) 4 F.(2d) 915; Packard v. Banton, 264 U. S. 140, 142, 44 S. Ct. 257, 68 L. Ed. 596, and cases therein cited.

The appellant relies on the use of the name "Del Monte" by others upon products sold in grocery stores, such as "Del Monte flour," "Del Monte flake biscuits," one of a number of varieties of biscuits manufactured by Standard Biscuit Company of San Francisco, "Del Monte Creamery," dealing in milk, butter, eggs, and cheese, and "Del Monte Coffee." It is sufficient with reference to such use of the name "Del Monte" upon food products by others to say that, whatever may be the respective rights of the appellee and these other users of the name "Del Monte," such use does not justify the appellant in its more recent use of appellee's well-known mark upon a new and different product recently produced by it; for, as has been stated, the question involved here is not the infringement of a trade-mark in which the prior use by others would be material, but is that of the adoption by the appellant of unfair methods of competition. Such practice is unfair to the appellee, notwithstanding the use of the brand by others, even if such use by others preceded the use by appellee. Natl. Pictures Theatres v. Foundation Film Corp., 266 F. 208, 211 (C. C. A. 2); Liebig, etc., v. Chemists, etc., 13 Reports Patent Cases, 635, 645; Croft v. Day, 7 Beav. 87; Juvenile Shoe Co. v. Fed. Trade Comm. (C. C. A.) 289 F. 57; Clark Thread Co. v. Armitage (C. C. A.) 74 F. 936; Shaver v. Heller & Merz (C. C. A.) 108 F. 821, 825; Barton v. Rex Oil Co. (C. C. A.) 29 F.(2d) 474, 475.

It is clear from the admitted facts and from the evidence that the appellant has been engaged in an effort to secure the advantages of the appellee's good will by means calculated to convey to the public the impression that appellant's oleomargarine is a product of the appellee. Injunction against the use of the words "Del Monte Brand" upon appellant's oleomargarine is a proper and necessary method of preventing such unfair competition. The appellant also complains of the scope of the injunction against it, because it bars the use of its corporate name in disposing of foodstuffs. It is apparent from the record that the purpose of adopting this name was to engage in the methods of unfair competition, which have since been indulged in, and the injunction against the use of the name in that manner was entirely proper. Juvenile Shoe Co. v. Fed. Trade. Comm. (C. C. A.) 289 F. 57; Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, L. R. A. 1918C, 1039. (C. C. A. 2); Vogue v. Thompson-Hudson Co. (C. C. A.) 300 F. 509; Rosenberg Bros. v. Elliott (C. C. A.) 7 F.(2d) 962; Eastman Co. v. Kodak Cycle Co., 15 Reports Patent Cases, 105.

Judgment affirmed.