**CALIFORNIA FRUIT GROWERS EXCHANGE et al. v. WINDSOR BEVERAGES, Limited, et al.**

No. 7422.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1941.

150

Edw. S. Rogers, Wm. T. Woodson, and James H. Rogers, all of Chicago, Ill., for appellants.

Eugene H. Nirdlinger, of Chicago, Ill., for appellees.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiffs appeal from a judgment dismissing for want of equity their complaint seeking to restrain trade-mark infringement and unfair competition upon the part of defendants. The court found that defendants' products "are different from plaintiffs'"; that the latter have a right to use the trade-mark Sunkist "because of their particular class" and that the name has not acquired a secondary meaning insofar as plaintiffs' products are concerned. Plaintiffs insist that the evidence does not support these findings; but that the proof discloses that defendants' carbonated citrus fruit and other beverages, labeled prominently with the trade name, constitute merchandise "of substantially the same descriptive properties" within the meaning of the federal statute, 15 U.S.C.A. § 96; that the mark has come to mean to the public that goods to which it is attached are those of plaintiffs; and, consequently, that its use not only infringes plaintiffs' trade-mark but constitutes unfair competition.

Plaintiff California Fruit Growers Exchange is a cooperative marketing association, with approximately 14,000 member growers, 200 local associations, and 25 district exchanges. Its sole activity is marketing fruits and their products. The trade-mark Sunkist has been used by this plaintiff since 1907. Continuously since that time it has labeled its fruits with the mark and distributed oranges, worth approximately $1,000,000,000, lemons worth $438,000,000 and grapefruit worth $29,000,000. It has expended some $28,000,000 in advertising its wares marketed under the trade-mark. It has procured United States registrations of the mark in various years from 1909 to 1933 for many articles including, among others, oranges, lemons, citrus fruits, oils and acids, pectin, citrus flavored non-alcoholic maltless beverages, as soft drinks, and concentrates for making the latter.

The other plaintiff, California Packing Corporation, packs and sells groceries, including canned fruits and vegetables and their juices as well as other products. It has used the trade-mark Sun-Kist since 1907, selling products labeled with this mark of the value of $35,000,000 and expending some $300,000 in advertising its goods under the mark. Between 1908 and 1933 it procured federal registrations of the mark for canned and dried fruits and vegetables, milk, butter, walnuts, ketchup, pickles, olive oil, jams, jellies, olives, coffee, tea, beans, pineapple juice and grape juice, and various other products.

The joint and concurrent use of the two marks by both plaintiffs has eventuated under and by virtue of an agreement between them whereby each has granted the other the right to employ the mark, a practice this court has approved. Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co., 63 F. 438, 441. Other courts have agreed; California Packing Corp. v. Sun-Maid Raisin Growers, 9 Cir., 81 F.2d 674. Consequently both plaintiffs properly joined in the complaint. Pillsbury Co. v. Eagle, 7 Cir., 86 F. 608, 41 L.R.A. 162.

The defendant corporation and the individual defendant officers, in Chicago, manufacture and sell non-alcoholic carbonated "fruit" beverages, including an "orange drink," lemon "soda," and other so-called sodas designated: strawberry, grape, cream and cherry; ginger ale and root beer. They place upon each container of such products, as the most prominent part of the label, the word "Sunkist" as a trademark or brand name. Indeed, as one glances at the bottle, the word, in large letters, at once attracts the eye and dominates the view.

The evidence shows that the trade-mark is commonly recognized in the trade as indicating products originating with the plaintiffs. The assistant secretary of the National Association of Retail Grocers, the president of Cook County Food Dealers Association, the editor of the official publication of the National Association of Retail Druggists and others thoroughly qualified to speak, testified that the name Sunkist suggests to each of them the wares of plaintiffs; that in retail stores, fruit branded Sunkist has the greatest demand of any handled. The customer demands it, and the products of each of plaintiffs, marked with this name, are recognized as possessing the finest quality. They attest that the name Sunkist is associated only with plaintiffs; that orange drinks marked "Sunkist" are taken by the public as originating from, or connected with the business of plaintiffs; that the labels of defendants suggest the goods of plaintiffs and imply that they are made by plaintiffs; that the bottled products of defendants, so labeled, indicate to the customer an origin only from plaintiffs; that when shoppers called upon dealers in Chicago handling de-

fendants' wares and inquired whether the beverages of defendants offered for sale were made by the "Sunkist people" or by the company "which put out Sunkist oranges", in most instances, the reply was "yes", in some cases, "yes, see the label" and more rarely, "I don't know, I think so."

The court had before it, therefore, the registrations mentioned under the statute, U.S.C.A. Title 15, Section 96, wherein it is provided that any person who shall, without the consent of the owner, reproduce, counterfeit, copy or imitate any registered trademark and affix the same to labels of merchandise of substantially the same descriptive properties as that registered, shall be liable to damages at the suit of the owner of the registered mark; covering here, registration for canned fruits and canned fruit juices, under the patent classification of "non-alcoholic beverages." It had also proof that the words had come to be associated in the minds of the purchasing public only with the merchandise of plaintiffs, meaning they had originated in plaintiffs' operations; that defendants' products, carbonated non-alcoholic beverages, bearing the same labels, actually produce confusion in the minds of the public and are being sold in the market to people who believe they are buying plaintiffs'. In addition defendants stipulated that the trade-mark had acquired a secondary meaning in that it was associated with plaintiffs alone, insofar as "citrus fruits and canned and bottled foods are concerned."

These facts can beget but one offspring, the inevitable conclusion that defendants have endeavored to appropriate and capitalize the trade-mark and trade name of plaintiffs. The evidence supports no other ultimate thought. The court should have entered a decree granting the relief prayed.

It is urged that the products of defendants are not of the same descriptive properties as those of plaintiffs. But we have seen that these trade-marks are registered and used by plaintiffs for the labeling of fruit juices, vegetable juices, canned jams and preserves and many other foods and beverages. In other words, they have been applied to foods and beverages manufactured and bottled or canned and thus sold on the market. To the most casual observer, it is apparent that a beverage said to be an "orange" drink, whether synthetic or real, when labeled in glaring form with plaintiffs' trade-mark, indicates that plain-

tiffs have begun to supplement their business of producing foods and beverages by including carbonated beverages.

The language of the act was not intended to be more or less comprehensive than the term "same class" used elsewhere in the Act, (15 U.S.C.A. § 85). The real test is whether the use of identical or similar trademarks would be likely to cause confusion or mistake in the minds of the public, to deceive purchasers,—where the challenged goods are sold in the same stores or distributed in the same manner. Here confusion is bound to result. It was the congressional intent to prevent such confusion and resulting mistake or deceit. Though the merchandise of others may be dissimilar, if the trade-mark is the same or similar, and the merchandise such as reasonably may be attributed to plaintiffs, deceit results. Decker & Cohn, Inc. v. S. Liebovitz Sons, Inc., Cust. & Pat.App., 46 F.2d 179; Goodrich Co. v. Hockmeyer, Cust. & Pat.App., 40 F.2d 99. Surely bottled beverages bearing the name Sunkist belong to the same general class of merchandise as bottled fruit and vegetable juices sold under the same name. As Judge Baker said, speaking for this court, in Church & Dwight Co. v. Russ, C.C., 99 F. 276, 280, "Goods are in the same class whenever the use of a given trade-mark or symbol or both would enable an unscrupulous dealer readily to palm off on the unsuspecting purchaser the goods of the infringer as the goods made by the owner of the trade-mark, or with his authority and consent." To use precisely the mark of plaintiffs, as defendants have done, indicates an intention to gain something, either from plaintiffs' reputation or their advertising or to compete therewith and thus forestall the extension of their business. Similar instances are to be found in Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Wall v. Rolls-Royce Co., 3 Cir., 4 F.2d 333; Armour & Co. v. Master Tire & Rubber Co., D.C., 34 F.2d 201; Del Monte Special Foods Co. v. California Packing Corp., 9 Cir., 34 F.2d 774; Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674; Alfred Dunhill of London, Inc. v. Dunhill Shirt Shop, Inc., D.C., 3 F.Supp. 487; Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272. From these and other precedents we conclude that it is now settled in this country that a trade-mark protects the owner against not only its use upon the articles to which he has applied

it but also upon such other articles as might naturally or reasonably be supposed to come from him. Protection extends to all goods of the same class even though the alleged infringement is not upon the same species of articles. Mantle Lamp Co. v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 2 Cir., 105 F.2d 908; Kotabs v. Kotex Co., 3 Cir., 50 F.2d 810; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774.

Defendants insist that the rule is not so liberal and that we must give more strict application to the statutory words than we have indicated is proper. But we do not think the citations submitted controvert the correctness of our conclusion. If they do, then we are of the further opinion that the present day rule is in accord with our expressions.

In addition to infringement of the trade-mark the proof is beyond doubt that defendants have infringed upon plaintiffs' common law rights and have competed unfairly or, perhaps we should say, have been guilty of unfair trade practices. The evidence is clear that the marks of plaintiffs have acquired a secondary meaning. They are purely fanciful in character, but to the public generally they have acquired the secondary significance of relating to and being associated with plaintiffs' products only; they have come to indicate that the goods in connection with which they are used are produced and sold only by plaintiffs. Being now endowed with such quality, they are entitled to protection. Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 95 F.2d 448. The correct reasoning is that plaintiffs, having a property right in a trade name, may prevent others from enjoying that property right or its use under conditions over which the owner has no control. If defendants are not restrained, into the hands of the retailer comes an unlawful instrument which enables him to increase his sales of the dishonest goods, thereby lessening the market for the honest product. This the law will not permit. Chesebrough Mfg. Co. v. Old Gold Chemical Co., Inc., 6 Cir., 70 F.2d 383.

In addition to what we have said the record contains other evidence bearing upon the intent of defendants which we do not deem it necessary to set forth at greater length.

The evidence justified findings only in accord with what is herein contained. The judgment will be reversed with directions to proceed in a manner consistent with the expressions herein contained.