**STANDARD BRANDS, Inc., v. SMIDLER.**

Civil Action No. 3444.

District Court, E. D. New York.

June 23, 1944.

Watson, Bristol, Johnson & Leavenworth, of New York City (Ellis M. Leavenworth, Tracy R. V. Fike, and Franklin M. Depew, all of New York City, of counsel), for plaintiff.

Schaines & Liberman, of New York City (W. R. Liberman, of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

This is a civil action for trade-mark infringement and unfair competition, jurisdiction of this Court being established and not in issue.

Plaintiff manufactures and sells a number of well-known brands of foods and pharmaceuticals, including, among others, V–8 Vegetable Juices, Stams Multi-Vitamin and Mineral Tablets, and Fleischmann's B–Vitamin Yeast Tablets. Plaintiff has used the trade-mark "V–8" for a combination of 8 vegetable juices, a liquid food packaged in cylindrical tin cans. Plaintiff and its predecessors have sold this product in grocery and delicatessen stores and in the grocery department of department stores, and have continuously since 1937 used the trade-mark "V–8" prominently displayed thereon. Defendant concedes that plaintiff and its predecessors have spent over $900,000 in advertising the said V–8 Vegetable Juices and that it has always been labeled and advertised as a product containing vitamins A, B, and C and the minerals calcium and iron.

Defendant started in 1942 to sell to drug stores and pharmaceutical dispensaries vitamin tablets packaged in thin, elongated,

cardboard cartons, bearing on the face of the said carton a large and prominent "V–8," and under this in small type "Vitamin Tablets," and beneath this in still smaller type "These tablets contain 8 vitamins and 3 minerals." At the time he commenced selling these vitamin tablets, labeled as indicated, defendant knew that the plaintiff had extensively advertised and used the trade-mark "V–8." He was apprised of the fact that the plaintiff claimed the defendant's use of "V–8" in the marketing of his vitamin tablets was considered an infringement of plaintiff's trade-mark and constituted unfair competition, as letters to that effect were dispatched from the plaintiff to the defendant in March, April, and July, 1943. The defendant did not reply to any of these letters.

After this suit was filed in October, 1943, defendant changed his package so that it now contains a large "V–8" in white lettering, and "M–9" in black letters of about one-fifth the size appearing partially between the lower part of the "V" and the "–8" and below this "Tablets." "Each tablet contains 8 vitamins and 9 minerals." The defendant continues to sell his product in this form.

Plaintiff had extensively advertised its Stams Multi-Vitamin and Mineral Tablets since March 1, 1943, as a product containing 8 vitamins and 9 minerals, some $800,000 having been spent during the 8 months prior to the change by the defendant in the labeling of his product. The plaintiff's vitamin tablets and vegetable juices are frequently sold in the same department stores.

The expenditure of this huge sum of money has stimulated the interest of an increasingly vitamin-conscious public in its product. The plaintiff's advertisements have sought to focus popular attention on the vitamin content of the vegetable juices which are used in the combination it markets; that this program has met with considerable success is evidenced by the extensive demand resulting in sales of $3,000,000 per year of this item alone.

It is the claim of the plaintiff that these facts indicate clearly that the defendant is guilty of unfair competition. The plaintiff contends that the defendant is attempting to reap for himself part of the fruits of the plaintiff's extensive advertising of its product, and that the defendant in choosing his symbol very much like plaintiff's deliberately set out by the use of his similar symbol to take advantage of the good name and reputation built up by the plaintiff because of the excellence of its product. It is further contended by plaintiff that defendant's symbol is likely to confuse purchasers or mislead them into the belief that defendant's product is in fact manufactured by plaintiff. If this contention is legally sound, a decree should be entered in favor of the plaintiff.

Vitamin tablets are bought by the general public as a food product. One judicial mind has heretofore reached that conclusion after considered deliberation (opinion of Davidson, C.P.J., dated October 23, 1940, in the case of Board of Pharmacy of the State of New Jersey v. Quackenbush & Co., 22 N.J.Misc. 334, 39 A.2d 28). It is likely that the general public looks upon this dietary supplement as nothing more than a concentration of the ordinary food which it daily consumes. One of the food products which a large share of the public deems of nutritious value is V–8 Vegetable Juices, as evidenced by its extensive distribution. It is common knowledge that the repeated association of a symbol or name with a particular product assumes the function in the public mind of designating and characterizing that product. This is so with the symbol "V–8," as applied to vegetable juices. That symbol directly suggests the presence of 8 vegetables from which plaintiff has extracted its juices. The use of the same symbol on another food product, however different the appearance of the package, may well foster the impression that this product also contains the same ingredients and qualities as the V–8 Vegetable Juices, albeit in a changed form or consistency. The utilization by the defendant of the symbol for which the plaintiff has created the tremendously favorable reception that has been accorded V–8 Vegetable Juices is unfair competition.

The case of Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A. 1918C, 1039, presented a very similar situation, the defense there as here being that defendant's product (maple syrup) was so different from that sold by plaintiff (pancake flour) that no competition or confusion could result. But the court said (pages 409, 410 of 247 F.):

"It is said that even a technical trademark may be appropriated by any one in any market for goods not in competition with those of the prior user. This was the

view of the court below in saying that no one wanting syrup could possibly be made to take flour. But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. * * * These we think are property rights which should be protected in equity. * * *"

In Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509, plaintiff used on its magazine a large capital letter "V" with a picture of a woman between its sides, and defendant used a similar symbol on women's hats. The court stated (page 511 of 300 F.):

"There is no reason to doubt that this course of conduct by the defendant manufacturer and its retailers created a very common alternative impression—first, that these hats were manufactured by the plaintiff; or, second, that although some knew that plaintiff was not manufacturing, yet these hats were in some way vouched for or sponsored or approved by the plaintiff."

In Wall v. Rolls-Royce of America, 3 Cir., 1925, 4 F.2d 333, the name "Rolls-Royce" was used by plaintiff on automobiles and aeroplanes and by the defendant on radio tubes. In granting an injunction the court said (page 334 of 4 F.2d):

"It is true those companies made automobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case. Electricity is one of the vital elements in automobile and aeroplane construction, and, having built up a trade-name and fame in two articles of which electrical appliances were all important factors, what would more naturally come to the mind of a man with a radio tube in his receiving set, on which was the name 'Rolls-Royce,' with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well. And if this Rolls-Royce radio tube proved unsatisfactory, it would sow in his mind at once an undermining and distrust of the excellence of product which the words 'Rolls-Royce' had hitherto stood for."

In the recent case of Emerson Electric Mfg. Co. v. Emerson Radio & P. Corp., 2 Cir., 1939, 105 F.2d 908, the court stated that plaintiff's equitable right to enjoin unfair competition existed entirely aside from the registration of its trade-mark and that it was not a prerequisite to the granting of an injunction that plaintiff prove a loss of customers. It was held that the unlawful marketing of a product under a name or symbol similar to one in long use by the plaintiff may be enjoined, though it be a product which does not compete with that upon which the plaintiff presently uses its symbol, for the reason that the plaintiff may subsequently choose to enter the field which the defendant has begun to exploit. In the instant case, plaintiff really does manufacture and sell vitamin tablets but no claim is made that customers for that product have been lost. As to the other theory upon which the courts now grant relief in this type of case, it was stated in the Emerson decision (page 910 of 105 F.2d):

"* * * if one merchant has established a business under his name in wares of one sort, a second merchant may not use that name in selling other wares, if these are so like the first merchant's that the public will be apt to think that the first merchant is selling them. We have so held a number of times. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L. R.A.1918C, 1039; Anheuser-Busch v. Budweiser Malt Products Corp., 2 Cir., 295 F. 306; France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304; Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman [Co.] v. Gordon, 2 Cir., 72 F.2d 272. * * *"

Plaintiff is accordingly entitled to a decree both on the law and facts for unfair competition enjoining the defendant from using the label presently affixed to its vitamin tablets and from using the symbol "V-8" on any revised label on a package of vitamin tablets.

Findings of fact should be submitted only in accordance with this decision and on notice to the other side. A decree may be submitted at the same time.