**J. S. TYREE, CHEMIST, Inc., v. THYMO BORINE LABORATORY.**

**No. 8831.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 1, 1945.

Rehearing Denied Nov. 28, 1945.

Curtis B. Morsell and A. L. Morsell, Jr., both of Milwaukee, Wis., and Arthur E. Dowell, Jr., of Washington, D. C., for appellant.

Ira Milton Jones, of Milwaukee, Wis., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a decree dismissing plaintiff's complaint which charged defendant with unfair competition and infringement of its registered trade-marks.

Plaintiff, J. S. Tyree, Chemist, Inc., has for many years been engaged in the manufacture and sale, in various states of the Union, including Wisconsin, of an antiseptic adapted for use in solution. Plaintiff is the owner of three trade-marks—"Tyree's Powder" dated December 2, 1919; "Tyree's Antiseptic Powder" dated January 9, 1923; and "J. S. Tyree" dated August 5, 1930. The first two marks were granted under the ten-year clause of the Act of 1905, 15 U.S.C.A. § 85, and plaintiff's use of these marks extends back to the 1890's. All of the marks are employed by plaintiff on an antiseptic powder used primarily for a douche. The powder is put up in a white box or package 2⅛" wide, 2⅛" long, and 4½" deep, having a characteristic dark blue wrapper, through which wrapper, printed in a straight line, in black letters, appear the words, "Tyree's Antiseptic Powder," and a script signature, "J. S. Tyree," is superimposed across the label. The label features, in larger type than the balance of the printing, "Tyree's Antiseptic Powder." The powder is sold under the name "Tyree's" or "Tyree," which is the dominating feature of the trade-mark registrations.

The labels which plaintiff affixes to its packages, besides bearing its trade-marks, describe the antiseptic powder as a general antiseptic for cuts, abrasions, non-venomous insect bites, as a foot wash for tender, tired and perspiring feet, as a gargle, and for offensive perspiration, in a douche solution.

Defendant, incorporated under the laws of Wisconsin in 1926, sells in the State of Wisconsin and in interstate commerce a medicinal preparation used as an astringent, deodorant and antiseptic lotion, put up in labeled bottles and packaged in a nile-green, black and white carton. Upon the solid green portion of the package, in black letters, appear the words—

*A TRUE*
*ANTISEPTIC*

# TY-REEN
TRADE MARK
FORMERLY KNOWN AS
## THYMO BORINE
(CONTAINS 28% ALCOHOL)

On the upper two of three white parallel bands running horizontally around the lower third of the box appear the following words—

Germicide    Deodorant
Delightfully Refreshing

while the third and lowest band reads "Active Ingredients: Thymol, Menthol, Eucalyptol. Oils of: Wintergreen, Peppermint, Cassia. Glycerine 15%."

At the bottom, on the solid black portion of the package, appears—

3 Fluid Ounces
Prepared by

Thymo Borine Laboratory
Milwaukee, Wis. U. S. A.

From 1926 until December, 1939, defendant identified its product by the trademark "Thymo-Borine," which was registered October 14, 1924. In 1939, the United States Department of Agriculture required defendant to change its trade-mark on the ground that the name suggested only a part of the ingredients used. Thereupon defendant adopted the mark "Ty-Reen," a contraction of its former mark "Thymo-Borine," and filed an application in the Patent Office for registration of the trademark "Ty-Reen." Plaintiff filed an opposition to the registration, testimony was taken by both parties, and on December 16, 1941, the Commissioner of Patents sustained the opposition and held that defendant was not entitled to the registration of "Ty-Reen."

The record of the opposition proceedings between the parties, introduced in evidence by plaintiff in the instant case, contained the testimony of eight retail druggists, seven of whom had had from 20 to 30 years' experience. This evidence was to the effect that plaintiff's product was a douche powder and that some of these druggists had never heard of its use for any other purpose; that plaintiff's product was kept on shelves with other articles of feminine hygiene; and that defendant's product was favorably known as a mouth wash and was kept on shelves with such products as listerine.

Prior to trial a survey was conducted by an investigator hired by plaintiff, who, in some drug stores, orally requested "Tyree Antiseptic," in others "Tyree's Antiseptic," but in no case did he ask for "Tyree's Antiseptic Powder" or use the word "powder." In eight out of ten instances he was given "Ty-Reen." In six cases the investigator presented to the druggist written slips asking for various items including "Small Tyree Antiseptic" and "Small Tyree." In no instance did these slips specify "Tyree's Antiseptic Powder," or include the written designation "powder." In four of these cases he was given "Ty-Reen."

The trial judge made special findings of fact upon which he stated his conclusions of law. In his findings of fact he found, inter alia, that defendant had never attempted to simulate the facsimile signature "J. S. Tyree" with or without the printed words "Chemist, Inc."; that the registration for the facsimile signature stated that it (the product) was to be used "for antiseptic powders * * *"; that plaintiff's two other registrations specifically referred to powder and antiseptic powder respectively; that the name "Ty-Reen," when spoken, does have a similar sound to "Tyree," but that defendant's packages are clearly distinguishable from plaintiff's packages; that defendant had scrupulously avoided any piratical methods for the purpose of stealing the good will the plaintiff has built up for its product; and that clear, rational, and obvious distinction exists between the products of the plaintiff and the defendant. The conclusions of law were that defendant had not colorably imitated any of plaintiff's three trade-marks nor had it affixed them to merchandise of substantially the same descriptive properties, and that the use by defendant of the mark "Ty-Reen" in connection with a liquid antiseptic does not infringe any rights of plaintiff's trade-marks.

The function of a trade-mark is to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 118 F.2d 149; and Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 671, 148 A.L.R. 125. Consequently, one who establishes the use of his mark in a going trade or business so as to distinguish his product from that of others, is entitled to be protected from the use of it by others in the same territory on goods which will be thereby confused with his product and likely to be passed off as such. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 60 L.Ed. 713. The protection which the law gives the owner of a trade-mark is not confined to the goods upon which it is, or has been, used by the owner of it, but extends to products which might be reasonably thought by the buying public to come from the same source if sold under the same mark. Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Mantle Lamp Co. v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corporation, 2 Cir., 105 F.2d 908; and California Fruit Growers Exchange v. Windsor Beverages, supra. His mark is the brand by which his goods can be identified, and when it is used by another the reputation of his mark, and consequently his own business reputation, are placed to that extent beyond his control. Unless the use by that other is upon goods so unlike his own or in territory so far from that which he has exploited that it will not create confusion, it will be enjoined. Standard Brands Incorporated v. Smidler, 2 Cir., 151 F.2d 34.

Defendant places special emphasis on the findings of the court that it has scrupulously avoided any piratical methods for the purpose of stealing plaintiff's good will and that no evidence suggests that defendant sought to pawn off its product as that of the plaintiff.

Upon the issue of infringement, these findings are immaterial since infringement does not depend upon the good faith or the bad faith of the infringer. It is the fact that matters. United Drug Co. v. Obear-Nester Glass Co., 8 Cir., 111 F.2d

997, 999; Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 471, 34 S.Ct. 648, 58 L.Ed. 1046; and Gehl v. Hebe Co., 7 Cir., 276 F. 271.

There is no absolute test in fact or in law by the application of which a court can determine whether defendant's trade-mark infringes an older trade-mark of plaintiff. But there are many judicial expressions which furnish a practical standard or test. Most of the statements are variations of the rule enunciated many years ago in the case of Seixo v. Provenzende, L.R. 1 Ch.Div. 192, thus: "What degree of resemblance is necessary is from the nature of things, a matter incapable of definition a priori. All that courts of justice can do is to say that no trader can adopt a trade-mark so resembling that of a rival as that ordinary purchasers, purchasing with ordinary caution, are likely to be misled." Brown-Forman Distillery Co. v. Arthur M. Bloch Liquor Importers, 7 Cir., 99 F.2d 708. See also Nu-Enamel Corporation v. Armstrong Paint & Varnish Works, 7 Cir., 95 F.2d 448, affirmed 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; and Johnson & Johnson v. Bauer & Black, 7 Cir., 82 F. 662.

In our case there are few, if any, of the essential or controlling facts in dispute. Whatever dispute exists has to do with the conclusions drawn from the facts. The question, therefore, is whether the court's conclusions are correct.

At the threshold, defendant makes the point that since the case was tried without a jury and the court entered special findings of fact, the findings may not be set aside unless clearly erroneous.

■ True it is, the trial court has the primary function of weighing the evidence and finding the facts, and we are bound by the findings if they are supported by the evidence. The rule, however, does not operate to entrench with like finality, the ultimate fact conclusions drawn therefrom. United States v. Anderson Co., 7 Cir., 119 F.2d 343; Murray v. Noblesville Milling Co., 7 Cir., 131 F.2d 470; and Mid-Continent Inv. Co. v. Mercoid Corporation, 7 Cir., 133 F.2d 803.

With these observations in mind we pass to the question whether defendant has infringed plaintiff's trade-mark rights. We agree with plaintiff that the answer depends upon whether the goods of the respective parties are, within the contemplation of the law, goods of substantially the same descriptive properties, and whether defendant's mark "Ty-Reen" is deceptively similar to the name by which plaintiff's ("Tyree" or "Tyree's") product is known.

The court found that both plaintiff's and defendant's products have been sold in the same drug stores; that plaintiff's product is recommended as a general antiseptic, as a gargle, and for the treatment of cuts and abrasions; and that defendant's product, while essentially a mouth wash, has value claimed for it as an antiseptic and as a gargle and in the treatment of superficial cuts and scratches. We accept these findings.

■ There are, however, facts and circumstances which must be taken into consideration in applying the rule for which defendant contends. First. The testimony of the druggists who testified before the Examiner of Trade Mark Interferences was admitted before the trial judge as an exhibit, at the request of plaintiff, it is true; nevertheless, we are in as good a position to weigh their testimony as was the trial judge. Western Union Telegraph Co. v. Bromberg, 9 Cir., 143 F.2d 288. Second. The undisputed testimony of the investigator showed that he orally requested "Tyree Antiseptic" and in eight out of ten instances he was given "Ty-Reen"; that in four out of six cases when he presented written slips to the druggist asking for various items including "Small Tyree Antiseptic" and "Small Tyree," he was given "Ty-Reen"; and that the name "Ty-Reen" when spoken has a similar sound to "Tyree." Under this state of the record we think the evidence clearly showed there was confusion between the products of the parties warranting a decree of infringement.

In reaching this conclusion we have not overlooked the case of Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 148 A.L.R. 125. The controlling question in the Philco case was whether the goods upon which the parties used their respective marks were so similar that under the law defendant's use of its mark would be enjoined. In that case defendant used its mark only upon portable machines for the degreasing of metal objects and upon parts and accessories for such machines. The plaintiff, however, applied its mark to lubricators, refrigerators, radios, and phonographs, and the goods of the respective parties were expensive and were bought by critical purchasers exercising a high de-

gree of caution. The trial court found that plaintiff did not manufacture or sell any equipment competing with, similar to, or designed for the uses for which defendant's apparatus was solely useful; and that there was no competition between plaintiff and defendant. As opposed to this, in our case, plaintiff's and defendant's products are both antiseptics, are both sold in the same drug stores to customers without prescriptions, to ordinary purchasers, purchasing with ordinary caution, and have coinciding uses in respect to the treatment of cuts and abrasions.

The decree is reversed and the cause is remanded to the District Court with instructions to proceed in accord with the views herein expressed.