# PHOENIX PAINT & VARNISH COMPANY *v.* JOHN T. LEWIS & BROS.

---

TRADEMARKS; PRIOR USE; GOODS OF DESCRIPTIVE PROPERTIES; LACHES.

1. Registration of the word "Phoenix" as a trademark for ready mixed paints, stains, Japans, and varnishes is properly refused by the Commissioner of Patents, where it appears that another applicant has adopted and made prior use of the same word as a trademark for paint colors and paste paints, the goods of both applicants being of the same descriptive properties.

2. Two trademarks may be said to be appropriated to merchandise of the same descriptive properties, within the meaning of the trademark act, when the general and essential characteristics of the goods are the same. The test is whether there is such a sameness in the distinguishing characteristics of the goods as to be likely to mislead the general public. If there is, only one mark should be registered.

3. In a doubtful case, registration should not be granted of a trademark, where it appears that, when the applicant adopted the mark, he knew of its prior adoption and use by another in connection with goods of the same general character and properties.

4. In a trademark interference case, the only question involved is whether the right of registration will be accorded either or both of the parties. And whether either of the parties has been guilty of laches will not be considered.

No. 533.   Patent Appeals.   Submitted November 18, 1908.   Decided December 22, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Titian W. Johnson* for the appellant.

*Mr Francis M. Phelps* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of adoption and use of the trademark "Phoenix" to John T. Lewis & Bros. Company, the appellee herein.

The John T. Lewis & Bros. Company and its predecessors have used this mark continuously on paint colors and paste paint since 1860. The company is located at Philadelphia, Pennsylvania. In 1892, more than thirty years after its adoption and use by appellee, the Phoenix Paint & Varnish Company [the appellant] was organized in Philadelphia, and commenced to use this mark on ready mixed paints, which use has continued to the present time.

On May 1, 1905, the Phoenix Paint & Varnish Company filed an application for registration, in which application it is stated that the mark is appropriated by the firm to "paints and stains, Japans and varnishes." Upon the filing of an application for the registration of the same mark by appellee, and the declaration of an interference, the Phoenix company amended its application so as to have the mark apply to *ready mixed* paints and stains, Japans and varnishes.

The Examiner of Interferences found that paste paints and ready mixed paints are of the same descriptive properties, and awarded priority of adoption and use to appellee. This decision was affirmed by the Commissioner.

While there is considerable evidence in the record that the John T. Lewis & Bros. Company have used this mark on ready mixed paints, as well as on paint colors and paste paints, we prefer to rest our decision upon the broader ground that paste paints and ready mixed paints are goods of the same descriptive properties, within the meaning of the trademark act. Sec. 5 of that act provides: "That trademarks which are identical with a registered or known trademark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trademark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers, shall not be registered." [33 Stat. at. L. 725, chap. 592, U. S. Comp. Stat. Supp. 1907, p. 1010.]

In construing the above provisions it must be borne in mind that the purpose of the act was to protect honest dealers and the public. It must also be borne in mind that courts have been very loath to permit one concern, however remotely its goods might be connected with those of another concern, to appropriate, through the instrumentality of a technical trademark, the reputation of the other firm.

We think two trademarks may be said to be appropriated to merchandise of the same descriptive properties, in the sense meant by the statute, when the general and essential characteristics of the goods are the same. To rule that the goods must be identical would defeat the purpose of the statute and destroy the value of trademarks. The test is whether there is such a sameness in the distinguishing characteristics of the goods as to be likely to mislead the general public. If there is, only one mark should be registered. Congress evidently intended to prevent the second registration of a mark that would enable an unscrupulous dealer to obtain the benefit of a valu-

able trade reputation established by conscientious effort and fair dealing, to the injury of the public as well as the owner of the mark.

The record shows that paste paint is produced by grinding dry colors in linseed oil until the paint and the oil become blended together and form a cohesive mass or substance. While this substance is in a semi-fluid condition, it requires further thinning with oil and drier before it is ready for use. It will thus be seen that the distinguishing characteristics of paste paint and ready mixed paint are the same. They both contain color, and both contain oil, and both are designed for the same ultimate purpose. The conclusion is irresistible that the use of this mark on paste paints, which are really mixed paints, by one concern, and its use on ready mixed paints by another concern, would inevitably lead to confusion, to the possible injury of the public and the firm first to adopt and use the mark.

When the Phoenix company adopted this mark it had been in use by appellee for more than thirty years. It is a technical mark, and there was absolutely no valid reason for its adoption by the Phoenix company. The mark was then the property of appellee, and whether appellee desired to use it in connection with the sale of its ready mixed paint or not, appellant had no right to so use it.

The purpose of the act being to prevent, and not to promote, fraud and mistake, we would not feel inclined, even in a doubtful case, to grant registration to a claimant where it appeared, as here, that, when he adopted the mark, he knew of its prior adoption and use by another firm in connection with goods of the same general character and properties. The opportunity for selection being as limitless as the human imagination, we have reason to question the motive prompting the adoption by one dealer of a mark previously applied by another dealer to like goods.

In *Collins Co.* v. *Oliver Ames & Sons Corp.* 18 Fed. 561, Justice Blatchford restrained the use by the Ames company of the trademark "Collins & Co." on shovels, notwithstanding that up to that time Collins & Company had made no shovels,

but were engaged in the manufacture of edge tools.  The court said:  "It appears that the axes and other articles made by the plaintiff, and which before that time were known and used in Australia, were stamped 'Collins & Co.'  Therefore, although the shovels made by Ames & Sons under this order and subsequently, and stamped 'Collins & Co.,' and sent to Australia and elsewhere, may intrinsically have been of high quality, yet the only object of the defendant in putting the stamp 'Collins & Co.' upon them must have been to avail himself of the credit and reputation and market which the plaintiff had established for the articles it made and sold with the stamp 'Collins & Co.' upon them.  There was no other purpose in this.  Clearly, those who purchased shovels made by Ames & Sons and stamped 'Collins & Co.' would believe that such shovels were made by the plaintiff.  *  *  *  This was an unlawful appropriation of the plaintiff's trademark.  It is true that the plaintiff up to that time had made no shovels.  It is also true that Ames & Sons and the defendant have built up a business in shovels stamped 'Collins & Co.'  But the plaintiff had a right to make shovels, and it had made kindred articles of metal, and its good name and reputation in its business were wholly connected with the use, in its trade, of the mark 'Collins & Co.' "

In *Church & D. Co.* v. *Russ,* 99 Fed, 276, it was held that a trademark used on packages of baking soda and saleratus is infringed by the use of such mark on packages of baking powder, on the ground that the articles are of the same class.  The court said:  "The greater part of the baking powder consists of the starch, used simply as a drier to absorb the moisture to which the baking powder may be exposed, and thus to prevent the formation of carbonic acid gas by the chemical combination of the soda and acid.  Consequently, every time the respondents sell a package of their baking powder having the complainant's trademark upon it, they are actually selling a package a material part of which consists of baking soda.  *  *  *  They belong to the same class of goods, coming in direct competition with each other in sale and use for the same purpose.  The

public would readily suppose that the baking powder bearing the complainant's trademark was either manufactured by it, or by someone having its authority and consent, and that it vouched for the superiority and high character of the goods bearing such trademark." See also *Godillot* v. *American Grocery Co.* 71 Fed. 873.

*Smith* v. *Reynolds,* 10 Blatchf. 100, Fed. Cas. No. 13,098, and 13 Blatchf. 458, Fed. Cas. No. 13,099, relied upon by appellant, is not in point. That case merely holds that the registration of a trademark for "paints" does not enable the registrant to restrain another party who, previously to the adoption and use of the mark by the registrant, had adopted and used it as a trademark on a particular kind of paint.

The contention is made that the appellee has forfeited its right by laches. This contention in this proceeding is untenable. *McLean* v. *Fleming,* 96 U. S. 245, 24 L. ed. 828; *Menendez* v. *Holt,* 128 U. S. 514, 32 L. ed. 526, 9 Sup. Ct. Rep. 143. This is not an infringement suit, but is an interference proceeding, where the only question involved is whether the right of registration will be accorded either or both parties to the proceeding. If the Commissioner is of the opinion that confusion will follow registration by both parties, it is his duty to deny such registration. In an action for infringement the question of laches may be pertinent, but not here.

The decision of the Commissioner of Patents is affirmed, and the clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, as required by law.      *Affirmed.*