## NULYNE LABORATORIES v. ELECTRO-ALKALINE CO.

(Court of Appeals of District of Columbia. Submitted November 13, 1922. Decided January 2, 1923.)

No. 1502.

1. Trade-marks and trade-names and unfair competition ⬤➜43—Tooth paste and antiseptic compound do not have same properties.

A tooth paste does not have the same descriptive properties as a compound used for bleaching, cleansing, and antiseptic purposes, even though the compound could be used in a diluted form as a mouth wash.

2. Trade-marks and trade-names and unfair competition ⬤➜43—Prior owner cannot appropriate business of later owner by manufacturing goods of same properties.

The prior owner of a trade-mark, who had used it only in connection with the manufacture of an antiseptic compound, cannot, after a later owner has adopted and used the same trade-mark for a tooth paste, which is an article of different descriptive properties, appropriate the business and good will of the later owner by commencing to manufacture a tooth paste under the trade-mark, which it had no intention of doing when the later owner entered the field.

Appeal from the Commissioner of Patents.

Application by the Nulyne Laboratories for registration of a trademark, opposed by the Electro-Alkaline Company. From a decision refusing registration, applicant appeals. Reversed.

Fred L. Chappell, of Kalamazoo, Mich., for appellant.
William S. Hodges, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Commissioner of Patents, in a trade-mark opposition case, in which the Office refused to register "Chlorox" for appellant as a trade-mark for tooth paste, on the ground of conflict with appellee's previously registered mark "Clorox," for use on "bleaching, cleansing, and antiseptic compounds."

In February of 1915 the appellee, a corporation located at Oakland, Cal., registered the following mark and claimed use since July 15, 1914:

According to the testimony of the president of appellee corporation, its preparation is put up in bottles, and the directions thereon "simply state what it is used for, as a germicidal disinfectant and antiseptic and a bleach." This witness, testifying in August of 1920, stated that for "over two years" he had used it as a "tooth wash." The testimony of the other witnesses for appellee was substantially the same, except that its manager stated that its preparation was used "for laundry purposes, household, creameries, hospitals, swimming pools, purification of water, bathing suits." This witness further stated that he had used it as a tooth wash "for probably four years, off and on," but he admitted that it never had been sold for that purpose. It further appeared that just prior to the taking of the testimony appellee had considered putting up a tooth paste and mouth wash.

Appellant, a corporation located in the city of Jackson, in the state of Michigan, filed its application in June of 1921 and alleged use since November of 1917.

[1] We are convinced that, at the time of the adoption and use of the mark by appellant, in connection with the sale of tooth paste, appellee did not contemplate the preparation and sale of a tooth paste or mouth wash. We are further convinced, by the evidence offered for appellee, that its preparation was neither intended for nor capable of use as a tooth paste. It may be assumed that, in a sufficiently diluted form, it may be successfully used as an antiseptic or mouth wash.

[2] This, therefore, is a case in which the goods of the parties are dissimilar and possess different qualities and characteristics. See Anglo-American Incandescent Light Co. v. General Electric Co., 43 App. D. C. 385 and Fishback Soap Co. v. Kleeno Mfg. Co., 44 App. D. C. 6. When appellant adopted its mark, the field was open. In other words, there is nothing to raise a doubt as to its good faith, and we therefore do not think appellee should be permitted, at this late day, to appropriate the business and good will thus established. This was the view of the Examiner of Interferences, who said:

"The mere fact that the goods of the opposer can be used as an essential ingredient of a tooth paste is deemed by the Examiner not to justify the conclusion that tooth paste and these goods possess the same descriptive properties."

The decision appealed from is reversed.
Reversed.