## PHILADELPHIA INQUIRER CO. v. COE, Com'r of Patents.

### No. 7944.

United States Court of Appeals for the District of Columbia.

Decided Dec. 8, 1942.

Writ of Certiorari Denied April 19, 1943.

See 63 S.Ct. 993, 87 L.Ed. ——.

Messrs. Frank E. Scrivener and Charles K. Davies, Jr., both of Washington, D. C., for appellant.

Mr. W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

Appellant was plaintiff in the District Court in what is commonly known as a

Section 4915 proceeding.[1] Previously, appellant had applied to the Patent Office for registration of the trade-mark "Everybody's Weekly", the name given to the magazine supplement section of the Philadelphia Inquirer's Sunday newspaper.

Inasmuch as the construction of the applicable statutory provisions is the whole of this case, we set forth the pertinent language of the Act immediately in order that the four previous determinations in this case may be understood as recited:

"[That] no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark * * *

\* \* \* \* \* \*

" (b) * * * Provided, That trademarks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered: * * *"[2]

The Patent Office examined appellant's application and passed it for publication. Whereupon, King Features Syndicate, which releases "Everybody's Pictorial Weekly", filed opposition. The Examiner of Interferences in the Patent Office determined that applicant had its mark in use before the opposer, and the opposition was dismissed, from which action there was no appeal. The opposer, however, introduced evidence which showed that a British publication had used a similar mark prior to applicant. The British publication carried the title "Everybody's—the popular Weekly". On the inside pages was the heading "Everybody's Weekly". The Examiner held that the applicant was not entitled to register its mark because the goods to which it was applied possessed the same descriptive properties as the British article and the two marks bore such close resemblance as to be likely to cause confusion.

Upon appeal to the Commissioner of Patents the decision of the Examiner was affirmed, but upon somewhat different reasoning. The opinion of the Assistant Commissioner clearly held that the two articles were of the same descriptive properties, and while observing that there was actually little likelihood of confusion, he concluded that the statute barred registration.

After a rehearing, at which a decision of this Court was pressed,[3] the Assistant Commissioner maintained his conclusion while clarifying his reasoning and holding. He held that not only were the marks applied to goods of the same descriptive properties but also that they were identical, and so the likelihood of confusion became irrelevant under the statute.

The District Court in a well reasoned opinion[4] held that the goods were of the same descriptive properties and that the marks were identical. The Court further held that the likelihood-of-confusion test was immaterial because that test is addressed to the similarity of the marks and not to the descriptive properties of the merchandise.

Upon appeal to this Court, appellant concedes that the marks are identical. Its chief argument is that likelihood of confusion is one of the criteria in determining whether goods are of the same descriptive properties. Since it believes that there is no chance of confusion, then it concludes that its supplement must not be of the same class as the British publication, a conclusion contrary to the express holding in the four previous adjudications.

We believe that the statute bars appellant's right to register. In making this holding we accept the reasoning of the District Court.

■ Appellant bases its argument upon the emphasis that the whole object of statutory and common law trade-mark law is to prevent confusion. With this all-important essence in mind, appellant rides rough-

---

[1] R.S. § 4915, 35 U.S.C.A. § 63. See American Steel Foundries v. Robertson, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953.

[2] 15 U.S.C.A. § 85.

[3] McGraw-Hill Pub. Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293. That was an infringement and unfair competition case, not a registration case. Moreover, the test of confusion there went to the similarity of the marks. Here appellant concedes that the marks are not similar but identical, and attempts to employ the confusion test to determine whether the goods are of the same class.

[4] 38 F.Supp. 427.

shod over the nicer standards the statute creates. Appellant takes the likely-to-cause-confusion test at the end of the proviso and reads it all the way back through the Act. Appellant may have a good idea for trade-mark law. Nonetheless, the statute must be read and applied as written.

■ We outline the meaning that the statute has for us:

(General Rule) That no mark by which the goods on which it appears may be distinguished from other goods of the same class shall be refused registration;

(Proviso) (1) But (a) if the mark is identical with one already in existence and (b) if it is used on goods of the same descriptive properties (with the same meaning as "same class" in the general rule; synonym, related goods), it shall not be registered; (2) or(a) if the mark so nearly resembles another mark as to be likely to cause confusion and (b) if it is used on goods of the same descriptive properties, it shall not be registered.

In contrast, appellant's construction of the statute, spelled out, would read something like this:

That no mark by which the goods on which it appears may be distinguished from other goods of the same class (the test of the class being the likelihood of causing confusion) shall be refused registration;

Provided, That trade-marks which are identical with a known mark and used on merchandise of the same descriptive properties (the test of the last phrase being the likelihood of causing confusion), shall not be registered; and also provided that trademarks which so nearly resemble another mark, as to be likely to cause confusion (appellant may cancel the test here),[5] and which are applied to goods of the same descriptive properties (again the test being the likelihood of causing confusion), shall not be registered.

If this be the meaning of the statute, it could have been written much more concisely: that no trade-mark shall be refused registration unless it is likely to cause confusion.

Congress, however, chose to lay down more definite standards, and to make differentiations. Congress provided that if a trade-mark is identical with one in existence and if it is applied to related goods, it shall not be registered, and that if a trademark so nearly resembles one in existence as to be likely to cause confusion, and if it is applied to related goods, it shall not be registered.

Congress separated the "identical" marks from the "nearly resemble" ones.[6] This was done by using sufficient language for standards in each instance and by dividing the two provisions with a comma followed by the conjunction "or". Then in the second part of the proviso, the part dealing with marks of close resemblance, Congress addressed the likely-to-cause-confusion test to the similarity of the marks[7] by using the adverbs "so" and "as" to introduce cor-

---

[5] We are not told by appellant whether in relating the confusion test to the descriptive properties he believes that it does not go to the close resemblance of the marks.

[6] Although the Supreme Court in American Steel Foundries v. Robertson, 269 U. S. 372, 46 S.Ct. 160, 70 L.Ed. 317, was concerned with the next proviso which deals with appropriating corporate names for trade-marks, the Court expressed an historic rule of trade-mark law which affords background for the construction of this section. "The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade-name, where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs." Page 381 of 269 U.S. page 162 of 46 S.Ct., 70 L. Ed. 317.

[7] The Judge of this Court who applied the confusion criterion to determine if goods were of the same descriptive properties while saying he reasoned from effect to cause in California Packing Corp. v. Price-Booker Mfg. Co., 52 App. D.C. 259, 285 F. 993, saw the two steps two and one-half years earlier. "It is conceded that the goods are substantially identical. The only question, then, is as to whether or not the two marks are so similar as to be likely to produce confusion in the minds of purchasers with respect to the origin of the goods upon which they are used." Proctor & Gamble Co. v. Eney Shortening Co., 50 App.D.C. 42, 267 F. 344.

See Morrison Co. v. Cudahy Packing Co., 50 App.D.C. 236, 270 F. 358.

Compare Nulyne Laboratories v. Electro-Alkaline Co., 52 App.D.C. 265, 285 F. 999, and Vacuum Oil Co. v. Gargoyle Textile Corp., 52 App.D.C. 268, 285 F. 1002.

relative clauses, to wit: "so nearly resemble * * * as to be likely to cause confusion". That the confusion test goes to the similarity of the marks and not to the descriptive properties of the goods is borne out by the fact that the phrase "merchandise of the same descriptive properties" has already appeared in the first part of the proviso, and again in the general rule in the form of the synonym, "goods of the same class", and in neither case was there any descriptive definition test corresponding to "likely to cause confusion".

The construction of the statute to us is clear, and being clear we choose not to be led astray by some of the case language which in all fairness must be said to support appellant.[8] That language has often been to the effect that where "similar or identical" trade-marks are concerned the test of registration is the likelihood of causing confusion. The usual problems are whether the marks are confusingly similar on goods of the same descriptive properties or whether the goods are of the same descriptive properties where the marks are substantially identical. If it is fairly clear that the goods do not have the same descriptive properties and their marks are dissimilar, contested cases do not arise. Few cases, on the other hand, present a difficult question on both issues. As a result the adjudicating bodies have not been made acutely aware of the statutory differentiation between similar and identical marks when applied to goods of the same

descriptive properties, nor have they, in applying the statute, been accustomed to discussing expressly, in the same case, the two distinct steps, i.e., (1) are the goods of the same descriptive properties, and if so, then, (2) *either* are the marks so similar as to be likely to cause confusion, or are the marks identical. When the Court of Customs and Patent Appeals, so far as we know, first applied expressly the confusion test to determine whether the goods were of the same descriptive properties, there was a 3-2 division with the minority writing a vigorous specially concurring opinion.[9]

The facts of this case have shown us, we believe, the proper construction of the Act, and with the statute properly construed, this case is of easy resolution. Appellant concedes that its mark is identical with that of the British publication. This concession is in conformity with the conclusions of the Assistant Commissioner and of the District Court. This concession places appellant within the first part of the proviso. The only other factor for consideration, then, is whether the marks are applied to merchandise of the same descriptive properties.[10]

There is general agreement that the meaning of this phrase is that of the phrase, "goods of the same class", which appears in the opening general rule of the section.[11] Whether goods are of the same class, or as it is sometimes stated, are the goods related,[12] can often be decided by what might

[8] California Packing Corp. v. Price-Booker Mfg. Co., 52 App.D.C. 259, 285 F. 993. B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 17 C.C.P.A., Patents, 1068; California Packing Corp. v. Tillman & Bendel, 40 F.2d 108, 17 C.C.P.A., Patents, 1048. The rule of these last two cases seems at first to be disapproved in Meredith Publishing Co. v. O. M. Scott & Sons Co., 88 F.2d 324, 326, 24 C.C.P.A., Patents, 956: "It is true that in both the preceding cases, there were expressions which, taken by themselves, and without regard to the context and the general purport of the opinions, might have indicated that the existence of confusion was the test by which we should determine whether the goods were of the same descriptive properties. However, the cases should not be so read." Yet when the Meredith Publishing Co. case is considered as a whole, its general purport seems to be there is little likelihood of confusion so the goods are not of the same descrip-

tive properties. Universal Paper Products Co. v. Bemis Bros. Bag Co., 116 F.2d 294, 28 C.C.P.A., Patents, 848.

[9] See concurring opinions in B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 104, 17 C.C.P.A., Patents, 1068, and California Packing Corp. v. Tillman & Bendel, 40 F.2d 108, 114, 17 C.C.P.A., Patents, 1048.

[10] For a converse situation see In re B. Manischewitz Co., C.C.P.A., Patents, 123 F.2d 641.

[11] Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 107, 17 C.C.P.A., Patents, 1103; Cross v. Williams Oil-O-Matic Heating Corporation, 48 F.2d 659, 660, 18 C.C.P.A., Patents, 1192; Williams Oil-O-Matic Heat. Corp. v. Westinghouse E. & M. Co., 62 F.2d 378, 379, 20 C.C.P.A., Patents, 775; Nims, Unfair Competition and Trade-Marks (3d ed. 1936) § 229(b), p. 621.

[12] Nims, Unfair Competition and Trade-Marks (3d ed. 1936) § 229, pp. 619-20. Elgin American Mfg. Co. v.

be called conference table consideration. At other times resort to the market place is necessary. Even then, if the test is framed in terms of confusion it is misleading, because that test is already in the statute in another connection, and because that is, to our minds, not precisely the issue. What is wanted to be known through this extrinsic evidence is whether the producers, the wholesalers, the retailers, and particularly the consumers, regard and treat the goods as though they were of the same class, and whether those purchasers will believe that the goods have the same origin so that they will reason that since X company makes good coffee, it probably makes good tea.[13] In such instances custom comes to temper logic in making the categories of goods. When the problem is looked at this way, it is seen that it is really a matter of degree of relation rather than of the "same" class. This relativity of relation becomes all the more important in the day of many by-products and nationally known goods.

█ In the present case it has been clear to the Examiner, to the Assistant Commissioner, to the District Court, and now to us, that a magazine supplement section of a Sunday newspaper belongs to the same class for the purpose of trade-mark registration as a stapled, tabloid, weekly newsmagazine. Just as extrinsic evidence would be cumulative when it was already clear that goods were not related, so here when the goods are so closely related, any amount of testimony that there was no "confusion" (of the source) in fact would not alter the conclusion that the goods are of the same descriptive properties. These goods, similar publications, are in the same class even under a very narrow and literal meaning.[14]

Under a fresh statute some might doubt this conclusion. Where, however, this phrase, "the same descriptive properties", has evolved[15] so that coffee is classed with horse-radish, fish with tea, mouth washes with cold creams, there cannot be the slightest doubt that these two similar publications are merchandise of the same descriptive properties.

It is certain that if the statute does anything, it bars the registration of identical marks for goods definitely of the same class.

Affirmed.

STEPHENS, Associate Justice, dissenting.

Since it is conceded that the trade-marks are identical, the only question in the case is whether the appellant's "merchandise," i. e., its magazine supplement section of a Sunday newspaper, is of the "same descriptive properties" as the British publication. The court rules, as I understand the majority opinion, that in deciding this question of fact the trial court could not consider likelihood of confusion and the testimony of the trade with respect thereto, but properly limited itself—although trade testimony was received in evidence— to inspection of the items of merchandise and to inferences which the court, without the aid of such testimony, drew from such inspection. The ruling is based upon the fact that confusion is referred to only in that (second) part of the proviso which relates to trade-marks which resemble each other as distinguished from those which are identical.

Looking at the statute apart from judicial construction, it does not seem to me to require the conclusion which the court reaches. But if the words of the statute leave the point in doubt, the cases in my opinion resolve it. In California Packing Corporation v. Price-Booker Mfg. Co., 1923, 52 App.D.C. 259, 285 F. 993, the dispute, as here, was whether the goods of the respective parties "belong to the same class or have the same descriptive properties." Price-Booker Company sought to register the trade-mark "Mission," accompanied by a representation of a mission house, for application to flavoring extracts for foods, mustard, tomato catsup, relishes made of chopped and ground pickles packed in spices and vinegar, chow chow, salad dressing, and vinegar. The California Packing Corporation, which opposed the application, had applied the identical trade-mark to canned fruits, canned vegetables, foods, and

Elizabeth Arden, Inc., 83 F.2d 687, 23 C.C.P.A., Patents, 1168.

[13] Elgin American Mfg. Co. v. Elizabeth Arden, Inc., 83 F.2d 687, 688, 23 C.C.P.A., Patents, 1168.

[14] " . . . no one would seriously argue that the two publications are not merchandise of the same descriptive

properties within the meaning of the statute." These words appear in the opinion of the Assistant Commissioner, and the District Court quoted them to conclude its opinion.

[15] Forst Packing Co. v. C. W. Antrim & Sons, 118 F.2d 576, 28 C.C.P.A., Patents, 1005.

ingredients of foods. The First Assistant Commissioner of Patents ruled that the goods did not belong to the same class because canned fruits and canned vegetables require a different manufacturing plant from that needed in the manufacture of pickles, the latter being packed and shipped in glass or wooden vessels, the former in air tight tins, and because pickles have no food value. On appeal the court rejected this test upon the ground that it related chiefly to features which ordinarily would be unknown to a prospective purchaser and would have no tendency to help him differentiate the goods of the one concern from those of the other. Stating that it must look for some other test for "the same descriptive properties," the court said:

"...No interpretation of the phrase "the same descriptive properties," which occurs in the same section, applicable to all cases alike, has ever been given, so far as we know. The courts have been content with deciding in each case as it arose either that the goods did or did not possess those qualities, without going further. *We think the dominant purpose of the part of the section here involved is the prevention of confusion and deception.* If the use of the later mark would be likely to produce either, the mark should be rejected. Whenever it appears that confusion might result, it is because the goods have the same descriptive properties. *We reason from the effect to the cause.* For instance, no one would be deceived into believing that a can of tobacco and a can of peas were put out by the same concern, simply because they bore similar trade-marks.

"Turning now to the goods of the parties to this litigation, *we find that they are sold in the same stores, are put out in small containers, are used in connection with each other, and are associated in the public mind.* We think that a person seeing the mark in question on a container of pickles would be likely to assume that they were produced by the same concern as that which produced the canned fruits or vegetables bearing a similar mark. At least we are not clearly convinced that he would not be, and therefore we hold against the newcomer...." [Italics supplied] [52 App.D.C. at 261, 285 F. at 995]

I think the statement of the court that "We reason from the effect to the cause" means that the court thought it proper to have recourse to trade testimony—because it could not, from mere inspection of the trade-marks and the goods, know of the effect; and the court could not, without recourse to trade testimony, have found that the goods were sold in the same stores, were put out in small containers, were used in connection with each other and were associated in the public mind; such facts could not have been determined from mere inspection of the marks and the goods. Moreover, reference to the record in the case discloses that trade testimony was introduced on the subject of likelihood of confusion. On the same day that the court decided the California Packing Corporation case it also decided Application of B. F. Goodrich Co., 1923, 52 App.D.C. 261, 285 F. 995. There the word "Safety" had been refused registration by the Commissioner of Patents as a trade-mark for pneumatic tire casings made of rubber combined with fabric on the ground that the word had been previously registered for conducting hose composed of rubber and fabric. The Commissioner ruled that the latter goods were of the same descriptive properties as those on which the applicant used its mark. On appeal the court upheld this ruling on the ground that:

"... if the use of the marks by the contending parties *would be likely to lead the public to believe that the goods to which they are applied were produced by the same person or concern, it must be so because the goods possess the same descriptive properties.* California Packing Corp. v. Price-Booker Manufacturing Co., 52 App.D.C. 259, 285 F. 993." [Italics supplied] [52 App.D.C. at 262, 285 F. at 996]

In American Tobacco Co. v. Gordon, 1925, 56 App.D.C. 81, 10 F.2d 646, Gordon applied for the registration of the words "Pall Mall" for pipes, cigar and cigarette holders, pouches, tobacco bags, humidors and cigar and cigarette containers. The American Tobacco Company opposed because it had used the same words as a trade-mark for cigarettes. The court held that these two types of goods were of different descriptive properties, saying:

"We have ruled that two trade-marks may be said to be appropriated to merchandise of the same descriptive properties, in the statutory sense, when the general and essential characteristics of the goods are the same; that is, where there is such a sameness in the distinguishing characteristics as to be likely to result *in confusion in the trade and deception of the public.* Phoenix P. & V. Co. v. John T. Lewis & Bro.,

32 App.D.C. 285...." [Italics supplied] [56 App.D.C. at 82, 10 F.2d at 647]

In Phoenix Paint & Varnish Company v. John T. Lewis & Bros., 1908, 32 App.D.C. 285, the Phoenix Paint & Varnish Company applied to register the word "Phoenix" as a trade-mark for ready mixed paints and stains, Japans and varnishes. There was opposition by John T. Lewis & Bros. upon the ground of continuous prior use by it and its predecessors of the same mark on paint colors and paste paint. Again the question was whether the goods of the two parties were of the same descriptive properties. The court held that they were. It said:

"*In construing the above provisions it must be borne in mind that the purpose of the act was to protect honest dealers and the public.* It must also be borne in mind that courts have been very loath to permit one concern, however remotely its goods might be connected with those of another concern, to appropriate, through the instrumentality of a technical trademark, the reputation of the other firm.

"We think two trademarks may be said to be appropriated to merchandise of the same descriptive properties, in the sense meant by the statute, when the general and essential characteristics of the goods are the same. To rule that the goods must be identical would defeat the purpose of the statute and destroy the value of trademarks. The test is whether there is such a sameness in the distinguishing characteristics of the goods *as to be likely to mislead the general public.* If there is, only one mark should be registered...." [Italics supplied] [32 App.D.C. at 287]

In Anglo-American Incandescent Light Company v. General Electric Company, 1915, 43 App.D.C. 385, it was sought by the Anglo-American Company to register "Mazda" as a trade-mark for incandescent gas mantles. The General Electric Company opposed upon the ground that it had previously used the same word as a trademark for incandescent electric lamps. Again the question was whether the descriptive properties of the items of merchandise were the same. It was held that they were upon the faith of the ruling in Phoenix Paint & Varnish Company v. John T. Lewis & Bros., supra, and American Stove Co. v. Detroit Stove Works, 1908, 31 App.D.C. 304. While it does not appear from the opinion that the testimony of the trade was actually consulted, the opinion does make clear that likelihood of confusion—to the injury of the one first to adopt a mark and to the general public—is the test.

Each of the foregoing cases involves identical trade-marks and therefore the first part of the proviso. But the court has also had before it the second part—relating to similar, as distinguished from identical, trade-marks. In G & J Tire Company v. G. J. G. Motor Car Company, 1913, 39 App.D.C. 508, it was sought by the latter company to register "G.J.G." enclosed in a triangular border for use on automobiles. The G & J Tire Company, which had used the letters "G & J" upon rubber or elastic tires, also in a triangular border, opposed. In affirming, upon the ground that the descriptive properties of the goods were not the same, the Commissioner's dismissal of the opposition the court said:

"The opposition is based chiefly upon the *probability of the use of the marks creating confusion in trade.* Before it can be held that the similarity of the marks will cause confusion in trade, it must appear that the marks are to be applied to goods of the same general class and of the same descriptive properties. Unless this be true, the mere similarity of the marks becomes immaterial. The law places no inhibition upon the use of the same mark by different persons, so long as the goods to which it is applied are so distinctive in class and quality as *to forbid the probability of confusion in trade.*" [Italics supplied] [39 App.D.C. at 511]

The court cited and quoted from Phoenix Paint & Varnish Company v. John T. Lewis & Bros., supra, to the effect that the "test is whether there is such a sameness in the distinguishing characteristics of the goods as to be likely to mislead the general public." The case having arisen upon demurrer to the opposition the court did not have recourse to trade testimony concerning likelihood of confusion, but it adopted likelihood of confusion as the test for determination of the question whether or not the descriptive properties of goods are the same; there is nothing in the case to indicate that recourse to trade testimony might not be made in a case in which the court felt that the question could not be answered on the pleadings.

All of the cases above discussed arose under the same proviso of the statute as is involved in the instant case (Section 5 of the Act of February 20, 1905, 15 U.S.C.A.

§ 85). It is true, as suggested by the majority, that in those cases the court did not make express reference to the different phrasing of the two parts of the proviso. But since the cases actually involved—in the case last mentioned the second part, and in each of the others the first—the proviso, they constitute, in my opinion, binding rulings as to the nature of the test, under each of the parts, for determining whether goods have the same descriptive properties.

The view which I take of the statute, and which I think finds confirmation in the cases which I have discussed from this court is taken also in another circuit. In Yale Electric Corporation v. Robertson, 2 Cir., 1928, 26 F.2d 972, the word "Yale," in an elipse surrounded by an irregular octagon, applied to electric flash-light torches and their batteries, was held not entitled to registration in view of prior use of the same word upon many types of hardware, especially locks and keys, but not upon electric flash-lights and batteries. Again the question was whether or not the goods had the same descriptive properties. The court (consisting of Circuit Judges Learned Hand, Swan, and Augustus N. Hand, in an opinion by Judge Learned Hand) in sustaining the trial judge's dismissal of the bill to compel registration, held that they had, saying:

"There remains the question of registration, the goods not being of the 'same descriptive properties' in the colloquial sense. It would plainly be a fatuity to decree the registration of a mark whose use another could at once prevent. The act cannot mean that, being drafted with an eye to the common law in such matters. American Steel Foundries v. Robertson, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317. While we own that it does some violence to the language, it seems to us that the phrase should be taken as no more than a recognition that there may be enough disparity in character between the goods of the first and second users *as to insure against confusion. That will indeed depend much upon trade conditions, but these are always the heart of the matter in this subject.* It is quite true that in Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, the court felt bound to find that caps and suits had the same descriptive properties, quite independently of the confusion which had arisen. We cannot say that that is the case here, for the fact that flash-lights and locks are made of metal does not appear to us to give them the same descriptive properties, *except as the trade has so classed them. But we regard what the trade thinks as the critical consideration, and we think the statute, meant to make it the test, despite the language used."* [Italics supplied] [26 F.2d at 974]

See also California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 1941, 118 F.2d 149, involving the phrase "substantially the same descriptive properties," used in Section 16 of the Act of February 20, 1905, 15 U.S.C.A. § 96. Referring to both Sections 5 and 16 the court said:

"The language of the act was not intended to be more or less comprehensive than the term 'same class' used elsewhere in the Act, (15 U.S.C.A. § 85). The real test is whether the use of identical or similar trade-marks would be *likely to cause confusion or mistake in the minds of the public, to deceive purchasers,*—where the challenged goods are sold in the same stores or distributed in the same manner. Here confusion is bound to result. *It was the congressional intent to prevent such confusion and resulting mistake or deceit.* Though the merchandise of others may be dissimilar, if the trade-mark is the same or similar, and the merchandise such as reasonably may be attributed to plaintiffs, deceit results...." [Italics supplied] [118 F.2d at 152]

The court quoted from an opinion by Baker, District Judge, in Church & Dwight Co. v. Russ, C.C.D.Ind. 1900, 99 F. 276, 280, as follows:

"... Goods are in the same class whenever the use of a given trade-mark or symbol or [sic[1]]both would enable an unscrupulous dealer readily *to palm off on the unsuspecting purchaser the goods of the infringer* as the goods made by the owner of the trade-mark, or with his authority and consent...." [Italics supplied] [118 F.2d at 152]

The reference by the majority to Forst Packing Co. v. C. W. Antrim & Sons, 1941, 118 F.2d 576, 28 C.C.P.A., Patents, 1005, holding that "Mansion Brand" applied to beef, bacon, bologna, frankfurters, and meat loaves consisting of a mixture of beef and pork, cannot properly be registered in view of the prior use of the mark "Old Mansion" applied to coffee, spices, rice and

---

[1] In Church & Dwight Co. v. Russ the word "on" is used, not the word "or."

kindred products, for the reason that these apparently diverse articles are of the same descriptive properties, and referring to rulings to the effect that fish and tea are of the same descriptive properties and that meat products, canned vegetables, canned fruits and other grocery products are of the same descriptive properties as sugar, to my mind buttresses the conclusion that recourse to trade testimony ought to be permitted for determination of the question whether or not items of merchandise have the same descriptive properties. How otherwise can it be learned whether or not such apparently dissimilar goods would be confused. Meredith Publishing Co. v. O. M. Scott & Sons Co., 1937, 88 F.2d 324, 24 C.C.P.A., Patents, 956, relied upon by the appellee, holds, as I read it, only that confusion is not the sole test for the sameness of descriptive properties but merely one of a number of factors which may be considered.

I find nothing in the statute or in the authorities which requires the conclusion that the court, in determining under the second proviso of Section 5 whether or not items of merchandise possess the same descriptive properties, must limit itself to visual inspection of the goods and inferences to be drawn from such inspection, and ignore likelihood of confusion and the testimony of the trade with respect thereto. I think this court has ruled that, in the light of the purpose of the trade-mark act— to protect honest dealers and the public— likelihood of confusion and what the trade thinks with respect thereto is the critical consideration for determining whether or not the descriptive properties of items of merchandise are the same. I think therefore that the case should be remanded to the trial court for a further hearing wherein trade testimony as to the likelihood of confusion between the appellant's magazine supplement and the British publication shall be given consideration.