34 C.C.P.A. (Patents)

**CHICAGO PNEUMATIC TOOL CO. v. BEN-DIX AVIATION CORPORATION.**

Patent Appeal No. 5193.

Court of Customs and Patent Appeals.

June 27, 1946.

Rehearing Denied Sept. 30, 1946.

BLAND and O'CONNELL, Associate Judges, dissenting.

———*———

Raymond G. Mullee, of New York City, for appellant.

Emory C. Naylor, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal, in a trade-mark opposition proceeding, from a decision of the Commissioner of Patents, 64 U.S.P.Q. 423, 64 U.S.P.Q. 587, reversing a decision of the Examiner of Trade-Mark Interferences in which it was held that appellant was entitled to register the mark "Pneudraulic" as applied to hydraulic riveters.

A joint stipulation of facts in lieu of testimony was submitted by the parties, in which, among other things, it was agreed that appellee had used its registered trade-mark "Pneudraulic" as applied to airplane shock struts and parts thereof since May 29, 1931; that the mark as registered consisted of the words "Pneudraulic Shock Struts," the words "Shock Struts" being disclaimed; that appellant first adopted and used its mark for hydraulic riveters with air means for generating hydraulic pressure in December, 1937, and in its business had distributed catalogues showing its products, a copy of one of which was marked Exhibit C and is in evidence; that the goods of the parties are both hydraulically operated; that the goods of appellee are used as an accessory on aircraft; that riveters similar to those of appellant are used in the building and repairing of aircraft; that the goods of appellee are classified in the United States Patent Office in Class 19, Vehicles, not including engines, while the goods of appellant are classified in Class 23, Machinery and Tools; and that the involved products of both parties are not sold through dealers or distributors to aircraft manufacturers. It further appears in the stipulation that appellee, while marketing a great variety of products does not make or sell riveters or similar tools.

The Examiner of Interferences held that the goods of the parties were so dissimilar as to render them of different descriptive properties. He pointed out that appellee sold its struts as a portion of airplane structures while appellant sold a tool, "a hydraulic riveter of general utility." He stated "It seems to the examiner that the essential characteristics of these products and their uses are quite different, and that the discriminating purchasers thereof would readily recognize them as products of different manufacturers. True there is some remote relationship in that opposer's shock struts constitute a part of an airplane structure whereas the applicant's riveters may be used in the building and the repair of airplanes. The mere

fact, however, that there may be some ultimate association in the uses of the goods is not controlling."

Since he held the goods to be of different descriptive properties, he considered it unnecessary to discuss the similarity of the marks.

The commissioner in his decision, while recognizing the considerable difference between the. goods of the parties, was of opinion that since they are both hydraulically operated "it would not seem unreasonable to assume that they may be manufactured by the same concern." He further pointed out that under the stipulated facts appellant manufactures hydraulic cylinders, but not under its involved trade-mark. The commissioner held that the goods of the parties possess the same descriptive properties, and the trade-marks in question to be identical. He reversed the examiner and sustained the opposition.

The mark of appellant is identical with the same word as it appears in the mark of appellee, but we are of opinion that the goods do not possess the same descriptive properties, and therefore it is not necessary to consider such similarity. The riveter of appellant is not dedicated solely to use in the manufacture or repair of airplanes. That is but one of the purposes in the wide scope of utility of appellant's riveter. The goods of the parties are not sold through dealers or distributors. Apparently both products are expensive and unquestionably must be ordered by aircraft manufacturers through a skilled, discriminating purchasing department.

The catalogue, appellant's Exhibit C, discloses that appellant is a manufacturer of a great variety of tools, among which is its involved riveter. It is shown in the exhibit that the riveter comprises a seemingly heavy power generator, a manipulative means manually controlled, and that extending between it and the power generator are three hose lines, consisting of a throttle hose for remote control, a high pressure oil hose and a return hose, each 15 feet long. The generator is powered by compressed air of at least 90 pounds pressure per square inch, which is transformed into hydraulic pressure and then trans-

mitted to the hand manipulative means at the end of the oil hose. That means comprises a piston cylinder and yoke together with dies designed to contact the ends of rivets with pressure which is said to be as high as nine tons. The machine works on both duraluminum and hot iron rivets in sizes up to 5/16ths of an inch in diameter. Many different units are available for use on structures of various shapes.

The shock strut of appellee is not described in the stipulation, but it is evident from a decalcomania which is in evidence and which is to be attached to appellee's goods that it contains a cylinder in which there is fluid influenced by air pressure. It is a complete structure somewhat similar in construction to a dashpot and seemingly is designed to soften the shock of landing. The manner of attachment is not disclosed.

In our opinion the riveter of appellant cannot be reasonably termed to possess the same descriptive properties as the shock strut of appellee. It is a tool in general use for riveting in many of the industrial arts. The shock strut is an airplane accessory and so far as the record shows it has no other use.

The only similarity in the involved goods is that pneumatic and hydraulic power is employed. That in our opinion is not sufficient to constitute them goods of the same descriptive properties. An analogous state of facts was present in the case of Williams Oil-O-Matic Heating Corp. v. Westinghouse Electric & Mfg. Co., 62 F.2d 378, 379, 20 C.C.P.A., Patents, 775. In that case appellant opposed the registration of the trade-mark "Adjust-O-Matic" as applied to adjustable and thermostatically controlled electric sadirons—flatirons. Appellant was the owner of the registered marks "Oil-O-Matic" and "Dist-O-Matic" used on electrically operated liquid-fuel-burning devices and electrically operated domestic refrigerating units respectively. Appellant contended that its involved goods were of the same class and possessed the same descriptive properties as the flatirons of appellee. This court affirmed the decision of the Commissioner of Patents rejecting that contention. The goods were held to be not similar in any respect except that they were adapted for connection with an electric

light circuit and were thermostatically controlled. In the majority opinion it was stated that: "Were it not for the fact that they are thermostatically controlled, we dare say that no one would contend that sadirons possess the same descriptive properties as either fuel-burning devices or refrigerators." Similarly here, if the involved goods of the parties were not powered by compressed air and a liquid we think no one would assert that they possess the same descriptive properties.

Furthermore, it should not be assumed that products such as those involved here are bought and sold on an indiscriminating market. The engineers in charge of airplane manufacturing and purchasing agents in that business, we think, would know the origin both of appellant's and appellee's goods; engineers and purchasing agents in other manufacturing plants would not be concerned with the origin of appellee's shock struts.

We are fully convinced by reason of the radical difference in structure and the different fields of utility of the goods, together with the discriminating classes of the public to which the involved goods of the parties are sold under their respective marks, that there can arise neither deception nor likelihood of confusion as to origin within the purview of California Packing Corporation v. Price-Booker Mfg. Co., 52 App.D.C. 259, 285 F. 993; Oppenheim, Oberndorf & Co., Inc. v. President Suspender Co., 55 App.D.C. 147, 3 F.2d 88; Wall v. Rolls-Royce of America, Inc., 3 Cir., 4 F.2d 333; I. E. Palmer Co. v. Nashua Manufacturing Co., 34 F.2d 1002, 17 C.C.P.A., Patents, 583; California Packing Corporation v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A., Patents, 1048; B. F. Goodrich Co. v. Hockmeyer et al., 40 F.2d 99, 17 C.C.P.A., Patents, 1068; Three In One Oil Company v. St. Louis Rubber Cement Co., Inc., 87 F.2d 479, 24 C.C.P.A., Patents 828; Rice-Stix Dry Goods Co. v. Industrial Undergarment Corporation, 152 F.2d 1011, 33 C.C.P.A., Patents, ——.

For the reason that we hold the involved goods of the parties are not of the same descriptive properties it is immaterial that appellant was subsequent to appellee in adopting and using its mark or that appellant's mark is identical with the first word in that of appellee.

For the reasons heretofore given, the decision of the Commissioner of Patents is reversed.

Reversed.

BLAND, Associate Judge (dissenting).

I regret that I am unable to agree with the majority that the decision of the Commissioner should be reversed. I think the result he arrived at is supported by a great weight of authority.

My disagreement with the holding of the majority in reversing the decision of the Commissioner is based upon two reasons: first, the trade-marks are identical; second, it seems to me that, in view of the facts of record, confusion is likely to result.

The stipulated facts show that the trade-marks are identical; that the Bendix Aviation Corporation (hereinafter referred to as "Bendix"), appellee herein, applies the "Pneudraulic" mark on airplane shock struts, while the Chicago Pneumatic Tool Company, appellant, (hereinafter referred to as "Pneumatic"), uses the same mark on hydraulic riveters; that the goods of both parties operate by hydraulic power; that Bendix is senior in the use of the mark and that its business has grown until, in 1942, the sales value of its product was more than 21 million dollars. It also appears from the exhibits in the case that Pneumatic is a very large concern making hundreds of different kinds of hydraulically operated devices; that it makes and sells, under the term "Pneudraulic", riveters used in the building of aircraft, and that it also makes hydraulic cylinders.

The stipulation states that Pneumatic manufactures hydraulic cylinders for aircraft control but that they are sold under a mark other than "Pneudraulic"; that the herein involved products of the parties are classified in different classes in the Patent Office, and that the respective parties have not had reported to them any specific instances of actual confusion in trade; that Bendix does not manufacture riveters and that the mark "Pneudraulic"

is applied by it only to shock struts and not to a great variety of other products which it produces; that Bendix has a registered mark consisting of the words "Pneudraulic Shock Struts", the words "Shock Struts" being disclaimed.

The question presented here is whether or not the goods are of the same descriptive properties as that phrase is used in the Trade-Mark Act, 15 U.S.C.A. § 81 et seq. In approaching this question, we should apply the test which has become settled law in this court, in the United States Court of Appeals for the District of Columbia, and every other court that I know of, namely, that if confusion is likely to result or if there is doubt on the question the newcomer should not be permitted to register; and this is particularly true where the marks are identical.

The courts have frequently said that the field is broad from which to select a desirable trade-mark and that the twilight zone of similarities between marks should be avoided by the newcomer. It being the dominant purpose of Congress, in passing the 1905 Trade-Mark Act, to prevent confusion, a trade-mark should not be registered because the goods have dissimilar features if by reason of their similarity confusion is liable to result.

I cannot avoid the conclusion that it easily may be assumed by purchasers of airplane shock struts, or purchasers of airplanes which have the hydraulic features, that Pneumatic, which is a large manufacturer of many different devices, produces Bendix's "Pneudraulic" shock struts. Ofttimes the purchasing agents for large concerns, which are users of the class of merchandise involved here, are not as "discriminating" as might be supposed. Frequently they are not experts as to the general nature and uses of such devices.

"Pneudraulic" seems to be a combination of syllables taken from the two words, pneumatic and hydraulic. This coined word is not as much in common use as most trade-marks and therefore confusion is more likely. The Bon Ami Company v. McKesson & Robbins, Inc., 93 F.2d 915, 25 C.C.P.A.Patents 826.

It has become well-settled law in this court, following early holdings of our predecessor, the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), and other courts, that in determining the exact question presented here we must take into consideration the likelihood of confusion and that if there is likelihood of confusion it is by reason of the fact that the goods are of the same descriptive properties. California Packing Corporation v. Price-Booker Mfg. Co., 52 App.D.C. 259, 285 F. 993; Oppenheim, Oberndorf & Co., Inc. v. President Suspender Co., 55 App.D.C. 147, 3 F.2d 88; Wall v. Rolls-Royce of America, Inc., 3 Cir., 4 F.2d 333; I. E. Palmer Co. v. Nashua Manufacturing Co., 34 F.2d 1002, 17 C.C.P.A., Patents 583; California Packing Corporation v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A., Patents, 1048; B. F. Goodrich Co. v. Hockmeyer et al., 40 F.2d 99, 17 C.C.P.A., Patents, 1068; Three In One Oil Company v. St. Louis Rubber Cement Co., Inc., 87 F.2d 479, 24 C.C.P.A., Patents, 828; Rice-Stix Dry Goods Co. v. Industrial Undergarment Corporation, 152 F.2d 1011, 33 C.C.P.A., Patents, ——.

Litigants from the beginning have attempted to give the phrase "merchandise of the same descriptive properties" its literal, narrow meaning, and some cases went so far as to hold that Pall Mall cigarettes were not of the same descriptive properties as a Pall Mall pipe, based upon the theory that one wanting a pipe would not purchase cigarettes. American Tobacco Co. v. Gordon, 56 App.D.C. 81 10 F.2d 646.

This court, as did our said predecessor, early interpreted the term "merchandise of the same descriptive properties" in the proviso of Section 5 to mean the same as the words "of the same class" in the first part of the paragraph. Check-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103; Cross v. Williams Oil-O-Matic Heating Corporation, 48 F.2d 659, 18 C.C.P.A., Patents, 1192; Philadelphia Inquirer Co. v. Coe, 77 U.S.App. D.C. 39, 133 F.2d 385.

It is also true that litigants have attempted to broaden the term "of the same class" to include classes which are too broad, such as all machinery, all medicines, household articles, etc., etc.

This court, during the first year it had patent jurisdiction, in determining the question as to whether goods were of the same descriptive properties, emphasized the importance of considering the question of confusion both in cases where the marks were identical and where they were not.

In I. E. Palmer Co. v. Nashua Manufacturing Co., supra, we laid down the rule, in substance, that if there was likelihood of confusion it was because the goods were of the same descriptive properties, even though the goods might be dissimilar. We followed there a case of unusual importance, California Packing Corporation v. Price-Booker Mfg. Co., supra, where Chief Justice Smyth, writing the opinion for the court, made the following statement which we quoted in said I. E. Palmer Co. case [34 F.2d 1004]: "The paragraph implies that, if the mark would not distinguish the goods of its owner from other goods of the same class, it should be denied registration. No interpretation of the phrase 'the same descriptive properties,' which occurs in the same section, applicable to all cases alike, has ever been given, so far as we know. The courts have been content with deciding in each case as it arose either that the goods did or did not possess those qualities, without going further. We think the dominant purpose of the part of the section here involved is the prevention of confusion and deception. If the use of the later mark would be likely to produce either, the mark should be rejected. *Whenever it appears that confusion might result it is because the goods have the same descriptive properties. We reason from the effect to the cause.* For instance, no one would be deceived into believing that a can of tobacco and a can of peas were put out by the same concern, simply because they bore similar trade-marks." [Italics mine.] See also Application of B. F. Goodrich Co., 52 App.D.C. 261, 285 F. 995.

Subsequently, in Sun-Maid Raisin Growers of California v. American Grocer Company, 40 F.2d 116, 17 C.C.P.A., Patents, 1034, (raisins as against wheat flour); California Packing Corporation v. Tillman & Bendel, Inc., supra, (coffee as against canned fruit); B. F. Goodrich Co. v. Hockmeyer et al., supra, (certain fabric clothing articles as against rubber footwear); and in other cases, the same rule was followed by this court.

This rule was conversely stated in Pratt & Lambert, Inc. v. Chapman & Rodgers, Inc., 136 F.2d 909, 913, 30 C.C.P.A., Patents, 1228, 1233, as follows: "However, we are of opinion that the goods of the parties differ so widely in composition and use that the concurrent use of the trade-mark '61' thereon would not be likely to cause confusion or mistake in the mind of the public or to deceive purchasers, and that, therefore, the goods of the parties do not possess the same descriptive properties."

In Three In One Oil Company v. St. Louis Rubber Cement Co., Inc., supra, this court held that "3 in 1" oil and small cans of cement used for gluing rubber, cloth and leather were goods of the same descriptive properties, based upon the proposition that while they were in many respects dissimilar confusion was likely to result by reason of certain common attributes and ideas concerning the goods, and registration was refused the newcomer.

An interesting case on this subject is Wall v. Rolls-Royce of America, Inc., supra, where the Circuit Court of Appeals of the Third Circuit, based upon the idea that confusion would result, enjoined Wall from calling his radio tubes "Rolls-Royce." The court there stated [4 F.2d 334]: "* * * Upon no other theory than a purposed appropriation to himself, and an intent to convey to the public a false impression of some supposed connection with the Rolls-Royce industries, can Wall's actions and advertisements be explained. * * * It is true those companies made automobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case."

In the famous so-called Kodak cases, 15 Reports Patent Cases 105, various ar-

ticles such as bicycles were held to be in the same class as cameras because of the likelihood of confusion, and yet there certainly is far more distinction between bicycles and cameras than there is between hydraulic riveters and hydraulic shock struts.

And here it must be remembered that the Supreme Court, in American Steel Foundries v. Robertson, Commissioner, et al., 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317, said: * * * "The law of trade-marks is but a part of the broader law of unfair competition" * * *, the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another.

I cite the Philadelphia Inquirer Co. case, supra, upon the holding of the majority of that court on the question of giving the phrase "merchandise of the same descriptive properties" the same meaning as "goods of the same class." In his decision in the instant case the Commissioner has cited that case as supporting a theory with which I do not agree. There the majority also held that where marks were identical the confusion test was improper and that the test was only applied where the marks were similar but not identical. I see no reason to make such a distinction because the law in that court and in this court was well-settled to the contrary before the Philadelphia Inquirer opinion was handed down. The reasoning in California Packing Corporation v. Price-Booker Mfg. Co., supra, where identical trade-marks were involved, is, in my view, unanswerable.

Congress said that an identical mark could not be registered if it was used on goods of the same descriptive properties as the goods of another who owned the same mark. It then said that a mark should not be registered if the marks were so similar, when used upon goods of the same descriptive properties, that confusion would be likely to result. Surely Congress was attempting to prevent confusion in each instance and since fewer marks are registered where the confusion test is applied in determining whether goods are of the same class one who takes an identical mark should not have an advantage over one who uses a mark which is only similar. Arriv-

ing at this result, that is, to say that the confusion test does not apply to identical trade-marks but does to similar trade-marks, is a failure to give effect to the spirit of the Act and, in my judgment is a strained and unwarranted construction of the statute. I am glad to say that we and our predecessors have never so held until the Philadelphia Inquirer Co. case was handed down by a divided court and not since cited by that court.

In the instant case the marks are not only identical, which certainly should call for a strict application of the rule of reasonable doubt, but the most conspicuous features of the goods of the parties are identical— they are both hydraulic apparatuses. Moreover, the fact that there is a close relationship in their use and that Pneumatic makes hydraulic cylinders are matters worthy of consideration. The name of the appellant corporation may also contribute to the promotion of confusion.

Owing to the similar characteristics of the goods of the respective parties, as before stated, and believing as I do that confusion is likely to result from the concurrent use of the identical marks of the parties on their respective goods, I agree with the Commissioner that Pneumatic's mark should not be registered.

I am authorized to state that O'CONNELL, Associate Judge, concurs in this dissent.